JOHN McCLURE, as Trustee of JULIA P. KIRKLAND under the Will of CHARLES P. KIRKLAND, Respondent, v. ROBERT J. LEAYCRAFT, Appellant.

1. INJUNCTION — APPEAL. While a temporary injunction involves discretion, a permanent injunction does not, when the facts conclusively show that it would be inequitable and unjust; if the facts found compel the conclusion, as matter of law, that an injunction should be refused as inequitable, the Court of Appeals will reverse an order of the Appellate Division reversing a judgment of the Special Term which denied a permanent injunction, and restore the judgment of the Special Term.

2. DEED — COVENANT RESTRICTING ERECTION OF APARTMENT HOUSES. A court of equity will not grant a permanent injunction enforcing a covenant, running with land, against the erection thereon "of any buildings except brick or stone dwelling houses," or "any tenement, apartment or community house," where it appears that nineteen of the twenty-five years which bounded the life of the covenant have passed, and that the object of the parties in making the covenant has been defeated by the erection of stores and apartment houses in the immediate vicinity by persons not under the control of the defendant, so that the enforcement of the covenant cannot restore the neighborhood to its former condition and make it desirable for private residences; since an injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive; the damages sustained, if any, may be recovered in an action at law, since the material change of circumstances so affects the interests of both parties as to make that remedy just to both.

McClure v. Leaycraft, 97 App. Div. 518, reversed.

(Argued October 13, 1905; decided October 27, 1905.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 13, 1904, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term and granting a new trial.

This action was brought to restrain the defendant from erecting an apartment house upon premises owned by him situate on the southwest corner of 145th street and St. Nicholas avenue in the city of New York.

Either party owns land nearly adjacent to that of the other and on the same block. There is a four-story dwelling designed for but one family standing on the land of the plaintiff, while the premises of the defendant are vacant. Both parties took title from a common source and subject to a covenant, made November 9th, 1886, against the erection at any time upon any part of the tract to which the lands of the respective parties belong "of any buildings except brick or stone dwelling houses" or "any tenement, apartment or community house." On the 8th of December, 1886, the covenant was so modified as to permit the erection of churches upon the tract and to limit the period of restraint to twenty-five years. These covenants by express agreement ran with the land and the instruments containing the same were duly recorded as conveyances in the proper office. Shortly before the commencement of this action the defendant filed plans to erect and had begun the erection upon his premises of a six-story modern apartment house, "divided into forty-two independent and separate suites of rooms or apartments, each suite containing a complete set of rooms and improvements such as are usually found in a first-class private dwelling house."

In addition to the foregoing facts the trial court found as follows:

"*Tenth.* That at the time when the conveyances hereinbefore set forth were made and entered into, the real property in the vicinity of the property hereinbefore described was occupied exclusively by small private dwellings, and was

classed as a private residential district, and such houses were built solely for one family and occupied by one family, and there were no places of business, flats, tenements or apartment houses in the immediate neighborhood of the property affected by the said covenants.

" *Eleventh.* That since the making of the said covenants and within the period of about ten years last past great changes have occurred in the neighborhood and in the class of buildings erected upon the property in said neighborhood, and in the immediate vicinity of the premises owned by the plaintiff and the defendant, and there has been erected upon such property, including the three corners directly opposite to defendant's premises, large apartment houses having a great many apartments therein, several on each floor and several stories in height, and which are occupied on the ground floor by places of business and used for business purposes; numerous flats or tenement houses have been built on the block fronting on One Hundred and Forty-fifth street between St. Nicholas and Bradhurst avenues, which is in the vicinity of plaintiff's and defendant's property."

"*Fourteenth.* That the erection upon the said land of the said apartment house which the defendant proposes to erect thereon will not decrease the fee value of the plaintiff's premises or of the land and dwellings within the tract hereinbefore described, but will increase the value thereof, and the use of the same as an apartment house will not make the neighborhood undesirable nor decrease the values of the adjoining property.

"*Fifteenth.* That the change which has taken place in the character of the neighborhood has made the property, including the tract hereinbefore described, especially the land owned by the defendant, undesirable for the erection of a private dwelling thereon.

" *Sixteenth.* That by reason of the change in the character of the neighborhood and of the immediate vicinity of plaintiff's property and defendant's property the same has been so altered as to render inexpedient the observation of the said

covenants, and it would be inequitable to enforce the covenants hereinbefore set forth against the defendant, as the enforcement of the same would cause him great damage and would not benefit the owners of the adjoining property."

The complaint was dismissed on the merits, for the reason, among others, " that the character and condition of the neighborhood have so changed since the making of the said agreements that it would be inequitable to enforce a covenant prohibiting the erection of a structure such as the defendant proposes to erect and equitable relief enjoining the defendant from erecting the said structure should be refused."

Upon appeal to the Appellate Division the judgment of the Special Term was reversed and a new trial ordered. The defendant appealed to this court.

*Bertram L. Kraus* and *Henry B. Wesselman* for appellant. The trial court was right in refusing to grant equitable relief because the change in the character of the neighborhood made it inequitable to do so, as stated by it in its conclusion of law. (*Amerman* v. *Deane*, 132 N. Y. 355; *Columbia College* v. *Thacher*, 87 N. Y. 311.) The granting of equitable relief, or the refusal thereof, was solely within the discretion of the trial court, and should not have been disturbed by the appellate court. (*Wormser* v. *Brown*, 149 N. Y. 172; *Jerome* v. *Ross*, 7 Johns. Ch. 315; *T. & B. R. R. Co.* v. *B., H. T. & W. Ry. Co.*, 86 N. Y. 107; *Shepard* v. *M. R. Co.*, 131 N. Y. 215; *Doyle* v. *M. E. R. Co.*, 136 N. Y. 505; *Bookman* v. *N. Y. E. R. R. Co.*, 147 N. Y. 298; *Health Dept.* v. *Purdon*, 99 N. Y. 237; *Gray* v. *M. R. Co.*, 128 N. Y. 499, 509; *O'Reilly* v. *N. Y. E. R. R. Co.*, 148 N. Y. 347; *Columbia College* v. *Thacher*, 87 N. Y. 311.)

*David McClure* for respondent. The covenant restricting the property against nuisances in effect granted to each of the parties thereto, and to their successors in title, an easement which limits the use to which the property may be put, and this reciprocal easement which each and every landowner in

the said tract has in each and every lot within the said tract is for all times fixed and vested, and cannot be disturbed. (*Trustees* v. *Lynch*, 70 N. Y. 445; *Wetmore* v. *Bruce*, 118 N. Y. 319; *Levy* v. *Schreyer*, 27 App. Div. 282.) Defendant's contention that the covenant has become inoperative because of the erection of apartment and tenement houses on other blocks in the vicinity is without merit. (*Lowland* v. *Miller*, 139 N. Y. 103.) There is no merit in defendant's claim that only an apartment house can be profitably erected on his land, and that, therefore, the covenant should not be enforced. (*Amerman* v. *Deane*, 132 N. Y. 355.) The notice of an intention to violate the covenant given by defendant through the filing of the plans for his proposed house was sufficient to authorize interference of a court of equity. (*Lattimer* v. *Livermore*, 72 N. Y. 174.)

VANN, J. As the order of reversal is silent as to the ground we are required to presume that the judgment of the trial court was not reversed upon a question of fact, and that the facts as found were approved by the Appellate Division. (*Bomeisler* v. *Forster*, 154 N. Y. 229; *Petrie* v. *Trustees of Hamilton College*, 158 N. Y. 458, 463; Code Civ. Pro. § 1338.) As said facts find ample support in the evidence and no exception was taken to any ruling relating to evidence, the only question presented for decision is whether upon those facts the plaintiff or the defendant is entitled to judgment. (*Spence* v. *Ham*, 163 N. Y. 220, 224; *National Harrow Co.* v. *Bement & Sons*, 163 N. Y. 505.)

The covenant in this case differs from the one recently under consideration by us, in substance as well as in the date when it was made. (*Kitching* v. *Brown*, 180 N. Y. 414.) In that case the covenant was made in 1873 when the modern apartment house was unknown and the promise was not to erect any "tenement house" upon the premises then in question. The covenant now before us was made in 1886 when apartment houses were not unknown, and it runs against the erection of an apartment house *eo nomine,*

Assuming, therefore, that the defendant was about to violate the covenant, the question is whether upon the facts found and approved by the courts below relating to the radical change in the situation of the property affected by the covenant, a court of equity was bound to refuse equitable relief in the form of an injunction and to leave the injured party to recover his damages in an action at law. If the granting or withholding of a permanent injunction is within the absolute discretion of the Supreme Court, the exercise of that discretion by the Appellate Division in favor of the plaintiff is beyond our power to review ; but if the facts found compel the conclusion, as matter of law, that an injunction should be refused, as inequitable, the order of reversal was wrong and the judgment rendered by the trial court should be restored.

While a temporary injunction involves discretion, a permanent injunction does not when the facts conclusively show that it would be inequitable and unjust. A court of equity will not do an inequitable thing. It is not bound by the rigid rules of the common law, but is founded to do justice, when the courts of law, with their less plastic remedies, are unable to afford the exact relief which the facts require. Its fundamental principle, as its name implies, is equity. It withholds its remedies if the result would be unjust, but freely grants them to prevent injustice when the other courts are helpless. It cannot set aside a binding contract, but when the effect would be inequitable owing to facts arising after the date of the agreement and not within the contemplation of the parties at the time it was made, it refuses to enforce the contract and remands the party complaining to his remedy at law through the recovery of damages.

These principles were applied by this court in an important case which we regard as analogous and controlling. (*Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311.) In that case adjoining landowners in the city of New York had entered into reciprocal covenants restricting the use of their respective lands to the sole purpose of a private residence

and expressly excluding " any kind of manufactory, trade or business whatsoever." After the lapse of nearly twenty years the defendant permitted a building upon his land, which was bound by the covenant, to be used for the business of a tailor, a milliner, an insurance agent, a dealer in newspapers and a tobacconist. After the commencement of an action by the other landowner to restrain such use an elevated railway was built and a station located in the street in front of the premises of both parties. It was found as a fact that the " railway and station affect the premises injuriously and render them less profitable for the purpose of a dwelling house, but do not render their use for business purposes indispensable to their practicable and profitable use and occupation. The said railway and station, however, do not injuriously affect all the property fronting on Fiftieth street and included in the said covenant, but only a comparatively small part thereof."

The trial court awarded a permanent injunction and the General Term affirmed the judgment, but the Court of Appeals reversed and dismissed the complaint on the ground that a contingency, not within the contemplation of the parties, had frustrated the scheme devised by them and rendered the enforcement of the covenant oppressive and inequitable.

This court obviously held that an injunction, under the circumstances, was not within the absolute discretion of the Supreme Court, for otherwise, according to its uniform rule of action, it would not have reversed the judgment or dismissed the complaint. The opinion of Judge Danforth, concurred in by all the members of the court, declared that there was a clear breach of the covenant which, under ordinary circumstances, would entitle the plaintiff to an injunction, but, he said, " though the contract was just and fair when made, the interference of the court should be denied if subsequent events have made performance by the defendant so onerous that its enforcement would impose great hardship upon him and cause little or no benefit to the plaintiff. ( *Willard v. Tayloe,* 8 Wall. 557 ; *Thomson* v. *Harcourt,* case 66, p. 415, vol. 2, Brown's Parliamentary Reports ; *Davis*

v. *Hone*, 2 Sch. & Lef. 340; *Baily* v. *De Crespigny*, L. R. [4 Q. B.] 180; *Clarke* v. *Lockport and Niagara Falls Railroad Company*, 18 Barb. 350.)"

After reviewing the authorities cited, the learned judge continued: "In the case before us, the plaintiffs rely upon no circumstance of equity, but put their claim to relief upon the covenant and the violation of its conditions by the defendant. They have established, by their complaint and proof, a clear legal cause of action. If damages have been sustained, they must, in any proper action, be allowed. But on the other hand, the defendant has exhibited such change in the condition of the adjacent property, and its character for use, as leaves no ground for equitable interference if the discretion of the court is to be governed by the principles I have stated, or the cases which those principles have controlled.  *  *  * The road was authorized by the legislature, and, by reason of it, there has been imposed upon the property a condition of things which frustrates the scheme devised by the parties, and deprives the property of the benefit which might otherwise accrue from its observance. This new condition has already affected, in various ways and degrees, the uses of property in its neighborhood, and property values. It has made the defendant's property unsuitable for the use to which, by the covenant of his grantor, it was appropriated, and if, in face of its enactment and the contingencies flowing from it, the covenant can stand anywhere, it surely cannot in a court of equity."

This case was followed in *Stokes* v. *Stokes* (155 N. Y. 581, 590); *Amerman* v. *Deane* (132 N. Y. 355, 359); *Conger* v. *N. Y., W. S. & B. R. R. Co.* (120 N. Y. 29, 32); *Page* v. *Murray* (46 N. J. Eq. 325, 331). (See, also, *Jewell* v. *Lee*, 96 Mass. 145; *Taylor* v. *Longworth*, 14 Peters, 172, 174; *Duke of Bedford* v. *Trustees British Museum*, 2 My. & K. 552; *Sayers* v. *Collyer*, L. R. [24 Ch. Div.] 170.)

So long as the *Columbia College* case stands, the judgment appealed from cannot, for the same principle controls both. In each the changed condition was wholly owing to the law-

ful action of third parties, which made the allowance of an injunction inequitable and oppressive. Indeed, an injunction in the case before us would be more oppressive than in the case cited, for it is expressly found, and the finding is final here, that the proposed erection would actually increase the value of the plaintiff's premises, while the enforcement of the covenant, without benefiting any one, would cause great damage to the defendant. It is a reasonable inference from the evidence that the rent roll of the defendant's land, with such dwelling houses on it as would rent to the best advantage, would not exceed $4,500 a year, while an apartment house such as he proposes to erect would rent for over $40,000 a year.

Nineteen of the twenty-five years which bounded the life of the covenant in question have passed, and the object of the parties in making it has been defeated by the unexpected action of persons not under the control of the defendant. Under the circumstances now existing the covenant is no longer effective for the purpose in view by the parties when they made it, and the enforcement thereof cannot restore the neighborhood to its former condition by making it desirable for private residences. If the building restriction were of substantial value to the dominant estate, a court of equity might enforce it even if the result would be a serious injury to the servient estate, but it will not extend its strong arm to harm one party without helping the other, for that would be unjust. An injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive. No injustice is done, for the damages sustained can be recovered in an action at law, and the material change of circumstances so affects the interests of the parties as to make that remedy just to both.

We think that both reason and authority require a reversal of the order of the Appellate Division, but exact justice calls for a modification of the judgment of the Special Term. As that court found that the proposed erection would cause no damage to the plaintiff, its judgment might be held a bar to

an action at law unless it expressly appeared that it was without prejudice to that remedy for the recovery of all damages sustained.

We, therefore, reverse the order appealed from and so modify the judgment of the Special Term as to declare that it is without prejudice to an action at law, and as thus modified we affirm it, without costs in this court or in the Appellate Division to either party.

CULLEN, Ch. J., GRAY, BARTLETT and WERNER, JJ., concur; O'BRIEN and HAIGHT, JJ., absent.

Order reversed, etc.