DOYLE v. JOHN E. OLSON REALTY CO.

(Supreme Court, Appellate Division, First Department. May 7, 1909.)

1. COVENANTS (§ 108*)—RESTRICTIVE COVENANTS—BREACH—DEFENSES.

Covenants in a deed restricting the use of the property conveyed remain operative even though an injunction to enforce them will not be granted because of changed conditions, and an action for damages for the breach would still exist.

[Ed. Note.—For other cases, see Covenants, Dec. Dig. § 108.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. SUBMISSION OF CONTROVERSY (§ 3\*)—CIRCUMSTANCES SURROUNDING CONTROVERSY—PARTIES.**

A contract for the sale of realty required the property to be conveyed with marketable title in fee simple free from incumbrance. In a submission of a controversy whether the purchaser should be compelled to accept the property, the question submitted by the parties was merely whether certain restrictive covenants in a deed by a former grantor as to the use to which the property should be put would prevent defendant from putting the property to a certain intended use. *Held* that, where neither all the facts and circumstances nor all the parties necessary for a proper determination of the question were before the court, it would decline to answer the question.

[Ed. Note.—For other cases, see Submission of Controversy, Dec. Dig. § 3.\*]

**3. SUBMISSION OF CONTROVERSY (§ 3\*)—PARTIES BOUND.**

Courts will not decide questions submitted in which parties not before the court are interested, the effect of which would be to foreclose their rights without a hearing, even though it might lead to the settlement of a particular controversy.

[Ed. Note.—For other cases, see Submission of Controversy, Cent. Dig. § 4; Dec. Dig. § 3.\*]

Submission of controversy upon an agreed statement of facts, under section 1279 of the Code of Civil Procedure, between Anna M. Doyle and the John E. Olson Realty Company. Proceeding dismissed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, McLAUGHLIN, and CLARKE, JJ.

Thomas W. Butts (Morgan J. O'Brien, of counsel, and Walter P. Vining, on the brief), for plaintiff.

Ralph Stout, for defendant.

CLARKE, J. Benjamin Stevens, Amelia A. Willett, and Elizabeth A. Brice owned and possessed in fee the block of land bounded by Fifth and Sixth avenues and Fifty-Second and Fifty-Third streets in the city of New York. By deed dated and acknowledged June 9, 1871, and duly recorded, they conveyed to William Sloane by full covenant and warranty deed premises 100 feet by 100.4 feet at the southeast corner of Sixth avenue and Fifty-Third street, subject to restrictions as follows:

"And the said party of the second part for himself, his heirs, executors, administrators and assigns, doth hereby covenant, promise and agree to and with the said parties of the first part, their heirs and assigns, that whenever he or they shall or may build on or improve said piece or parcel of land or any part thereof he or they shall and will erect and build or cause to be erected and built good and substantial first-class buildings of at least four stories in height above basement constructed of brick or stone and the fronts of which shall be of best quality brown stone or Dorchester stone or Philadelphia brick with stone trimmings and the said buildings to front on Sixth avenue and shall not nor will at any time erect or build or cause or suffer to be erected or built upon the said premises any house of any other description or character to front on Sixth avenue.

"And the said party of the second part further covenants and agrees to and with the said parties of the first part that, in case he shall erect and build a building in the rear of said lots to front on Fifty-Third street, the said building shall be a first-class dwelling house not less than four stories in height above the basement, and the front of which shall be of best quality

brown stone or Dorchester stone or Philadelphia brick with stone trimmings and not less than sixteen feet six inches in width in front. And that he will erect or build the said dwelling house or cause the same to be erected and built in such manner that the exterior face of the front wall thereof shall be on a line parallel with and distant eight feet from the southerly side or line of Fifty-Third street aforesaid, and that he will not erect or build or permit to be erected or built any erection, structure or building on that part of the premises hereby conveyed which is bounded northerly in front by the southerly side of Fifty-Third street aforesaid and in the rear southerly by a line parallel to such southerly line of Fifty-Third street and distant eight feet therefrom except only the necessary steps for entrances and platforms, pedestals and iron or stone railings connected therewith, and an iron or stone fence inclosing the said part of the said premises and the foundations and copings of such fence or railings, but that he shall and will at all times preserve and keep the last-mentioned part of the said premises hereby conveyed an open courtyard unobstructed except as aforesaid. And the said party of the second part for himself, his heirs, executors, administrators and assigns, doth hereby further covenant, promise and agree to and with the said parties of the first part, their heirs and assigns, that the said party of the second part, his heirs and assigns, or any of them, shall not nor will at any time hereafter erect, build, make, establish or carry on or cause or permit to be erected, built, made, established or carried on in any manner on any part of the premises hereby conveyed any livery or private stable or any stable of any kind, coalyard, slaughterhouse, tallow chandlery, steam engine, smith shop, forge, furnace, brass foundry, nail or iron factory, or any manufactory of glass, gunpowder, starch, glue, varnish, vitriol, ink or turpentine, or any cooper's or carpenter's shop, or any establishment for tanning, dressing, preparing or keeping of skins, hides or leather, or any brewery, distillery, sugar or other factory or lager beer establishment, theater, museum, opera house, circus, menagerie, or public show, or spectacle or drinking saloon or barroom, dance house or place of amusement of any kind, engine house, schoolhouse, or any other erection known as or used or employed for purposes known as nuisances in the law, or erect or build or commence to erect or build any building or edifice for any business with intent to use the same or any part thereof for any of the purposes aforesaid.

"And said party of the second part for himself, his heirs, executors, administrators and assigns, doth hereby further covenant, promise and agree to and with the said parties of the first part, their heirs and assigns, that in case he, the said party of the second part, his heirs and assigns, or any of them, shall build and erect or cause to be built and erected a dwelling house on the rear of said lot aforesaid to front on Fifty-Third street, that whenever he or they shall convey the same the deed or conveyance thereof shall contain in addition to the above restriction a clause of restriction against a 'meat shop, cabinet maker's shop, bakery, tenement, community house, or any kind of manufactory, trade or business whatever,' and shall contain the following provision: 'That the building erected thereon shall be restricted to a private dwelling without a store or stores underneath.'"

The said deed further provided:

"The said covenants to be construed and taken as covenants real running with the land."

The remainder of the block on Sixth avenue was conveyed in 1868, three years prior to the conveyance to plaintiff's predecessor in title, by the same grantors from whom the plaintiff derives title, and subject to the same restrictions. William Sloane and wife, by deed dated and acknowledged April 30, 1874, and duly recorded, conveyed to Samuel Simon, Jr., and Abraham Dryfoos, out of the aforesaid parcel of 100 feet by 100.4 feet, two parcels designated on the map included in the submission as A, which had a frontage of 80.4 feet on Sixth avenue and a depth of 74.4 feet on Fifty-Third street, and B, imme-

diately adjacent thereto on the south, 20 feet front on Sixth avenue, and 74.4 feet in depth; that is to say, the whole Sixth avenue front of the original parcel but only 74.4 feet in depth. By mesne conveyances, subject to the same restrictions set forth in the deed from Stevens and others to Sloane, these two parcels, A and B, came into the possession of the plaintiff herein in 1876.

On June 24, 1908, the plaintiff and the defendant entered into a contract as vendor and vendee of parcel A, being 80.4 feet on Sixth avenue and 74.4 on Fifty-Third street. Said contract contained certain provisions not germane to this controversy, and concluded as follows:

"The property shall be conveyed by full covenant warranty deed (short form) with marketable title in fee simple, free from incumbrance, excepting as herein stated."

Defendant objects to and refuses to take title on the ground that the restrictions hereinbefore recited, contained in the deed of Benjamin Stevens and others to William Sloane, prevent defendant from erecting on the premises in question a good and substantial building in height equal to not less than four stories above the basement and to be constructed of iron, cement, or other fireproof material, the front thereof to face on Sixth avenue, and not to be of brown stone or Dorchester stone or Philadelphia brick with stone trimmings, to be used as a theater, opera house, or place of amusement, with a hotel, barroom, or drinking saloon attached thereto or contained therein. In all other respects the plaintiff is ready, able, and willing to deliver, and the defendant ready, able, and willing to take title.

The statement of facts sets up: That the use to which the property in question is put and the character of the neighborhood have changed since the creation of the restrictions. That Sixth avenue from Fifty-Second to Fifty-Third streets and also north and south thereof for many blocks on both sides has been and is now used exclusively for business purposes or for business and ordinary tenements. That there now are numerous liquor stores in Sixth avenue near and north and south of the point in question; there being one at the northeasterly corner of Fifty-Second street and Sixth avenue, one at the southwesterly corner of Fifty-Third street and Sixth avenue, and both have been maintained there for many years. On the block of Fifty-Third street west of Sixth avenue there are large and small business places of many kinds. The elevated road passes and turns westerly through Fifty-Third street, and there is a large tower maintained in Fifty-Third street adjacent to the front of the premises. The question submitted for decision is: Are the restrictive covenants contained in the deed dated June 9, 1871, made by Stevens and others to Sloane, now operative, and do they prevent the erection and use of a theater, opera house, or place of amusement with a hotel, drinking saloon, or barroom attached thereto or contained therein? If the question be answered in the negative, the plaintiff prays judgment against the defendant directing it to take title pursuant to the terms of the contract of sale. If answered in the affirmative, the defendant prays judgment against the plaintiff relieving it from its contract of purchase.

It will be noted that the question submitted is peculiar. The contract provides that the property shall be conveyed with marketable title in fee simple, free from incumbrance. The question submitted is not that suggested by the contract (is the title marketable), but contains two propositions: First, are the restrictive covenants now operative? And, second, do they prevent the erection and use of a theater, opera house, or place of amusement with a hotel, drinking saloon, or barroom attached thereto or contained therein? And by the submission judgment is to be entered for plaintiff or defendant as the court may answer this whole question, containing the two propositions, in the affirmative or the negative. The parties have not therefore submitted the facts and asked for such judgment thereon as the law requires, but have presented an issue made by themselves.

In Missouri, K. & T. R. Co. v. Union Tr. Co., 156 N. Y. 592, 51 N. E. 309, Vann, J., said: .

"That learned court (the General Term) had jurisdiction to decide, and we have jurisdiction to review, only the questions that were actually submitted and which arose out of the facts stated in the record of submission."

The question at bar was obviously framed in the light of the decisions holding that a court of equity will not enforce restrictive covenants if subsequent events have made performance by the defendant so onerous that enforcement thereof would impose great hardship to him and cause little or no benefit to the plaintiff. Trustees of Columbia College v. Thatcher, 87 N. Y. 311, 41 Am. Rep. 365.

None of the cases, however, declare the covenant inoperative, but, while denying equitable relief, support an action at law for damages for the breach. Thus in the Thatcher Case, supra:

"In the case before us the plaintiff's rely upon no cicrumstance of equity, but put their claim to relief upon the covenant and the violation of its conditions by the defendant. They have established by their complaint and proof a clear legal cause of action. If damages have been sustained, they must in any proper action be allowed."

In McClure v. Leaycraft, 183 N. Y. 36, 75 N. E. 961, the court said:

"It cannot set aside a binding contract, but when the effect would be inequitable, owing to facts arising after the date of the agreement and not within the contemplation of the parties at the time it was made, it refuses to enforce the contract and remands the party complaining to his remedy at law through the recovery of damages."

So that in any event the first part of the submitted question must be answered in the affirmative because the court having no power to set aside a binding contract, an action for damages for the breach thereof exists, even if an injunction to enforce said contract would not be granted. The covenants therefore are still operative. "Do they prevent the erection and use" of the described buildings? Those words are ambiguous. Does the question mean that the erection of such buildings would be prohibited by the mandate of a court of equity, or does it mean that the covenants cannot be breached without subjecting the violator thereof to an action for damages?

We cannot say upon this submission whether a court of equity would or would not issue an injunction. It must be borne in mind

that the original grantors owned the whole block between Fifth and Sixth avenues, Fifty-Second and Fifty-Third streets, and that they had in mind the protection of the property upon Fifty-Third street by the restrictive covenants as to the land fronting on Sixth avenue, and that, while the facts submitted deal with certain changes which are alleged to have taken place in Sixth avenue, they are silent as to the present condition of Fifty-Third street east of Sixth avenue. In fact a portion of the lot conveyed in 1871, out of which the premises in suit were carved, to wit, a 25-foot lot fronting on Fifty-Third street immediately adjacent to the premises in controversy to the east, is not represented in the matter at bar. Therefore there are not presented to the court the facts and circumstances affecting that property or the remaining property on Fifty-Third street which might be of controlling influence upon a court of equity in passing upon the question of whether or not an injunction should issue to enforce these covenants. The court is confined to the facts agreed upon and can make no inferences or in any way depart from or go beyond the statement presented. Clark v. Wise, 46 N. Y. 612; Fearing v. Erwin, 55 N. Y. 486; Marx v. Brogan, 188 N. Y. 431, 81 N. E. 231. The court will not decide questions in which parties not before the court are interested, the effect of which would be to foreclose their rights without a hearing, even though it might lead to the settlement of a particular controversy. Wood v. Squires, 60 N. Y. 191; Union National Bank v. Kupper, 63 N. Y. 617; Kennedy v. Mayor, 79 N. Y. 361; Dickinson v. Dickey, 76 N. Y. 602; Kelley v. Hogan, 69 App. Div. 251, 74 N. Y. Supp. 682; Schreyer v. Arendt, 83 App. Div. 335, 82 N. Y. Supp. 122; Davin v. Davin, 105 App. Div. 580, 94 N. Y. Supp. 281.

The parties to the controversy might have submitted a clear cut question to the court: Was the title marketable? This they carefully refrained from doing, but in lieu thereof attempted to procure an opinion from the court, as we may infer from the peculiar phraseology of the question, as to whether a court of equity would prohibit the erection of a building in violation of the covenants. Because neither the facts nor the parties necessary for the proper determination of that question are before the court, it declines to answer the question propounded.

This proceeding therefore is dismissed. All concur.