(85 Misc. Rep. 515)

### NORTHRUP et al. v. SCOTT et al.

(Supreme Court, Special Term; Erie County. May, 1914.)

1. CONTRACTS (§ 212*) — CONSTRUCTION — TIME FOR PERFORMANCE — PRESUMPTION.

Where the time for the performance of a contract otherwise valid and complete is not specified, the presumed intention of the parties that performance shall be within a reasonable time, considering the circumstances under which the contract was executed, will be read into the contract as if originally expressed therein.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 944–955; Dec. Dig. § 212.*]

2. CONTRACTS (§ 277*)—PERFORMANCE—TENDER AND DEMAND—NECESSITY.

Where either party to a contract, which, though otherwise valid and complete, does not specify the time for performance desires to preserve any legal remedy, or avail himself of a defense for breach of the contract, he should put the other party in default by a tender of and a demand for performance within a reasonable time specified.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1217–1232; Dec. Dig. § 277.*]

3. SPECIFIC PERFORMANCE (§ 8*)—CONTRACT TO CONVEY REALTY—DISCRETION TO GRANT RELIEF.

Specific performance of a contract to convey realty is not a matter of right, but rests in the sound discretion of a court of equity, and should not be decreed when inequitable.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 17, 18; Dec. Dig. § 8.*]

4. SPECIFIC PERFORMANCE (§ 121*) — CONTRACT TO CONVEY REALTY — SUFFICIENCY OF EVIDENCE.

Where the evidence in a suit in equity in the right of a deceased vendor for the specific performance of a land contract shows the rights of the parties to be involved and doubtful, the complaint will be dismissed on the merits.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

Suit in equity by Mary G. Northrup and others against Edwin A. Scott and others, in the right of the vendor for the specific performance of a contract. Complaint dismissed.

Willard H. Ticknor, of Buffalo, for plaintiffs.
Adelbert Moot, of Buffalo, for defendants.

LAUGHLIN, J. This is a suit in equity in the right of the vendor for the specific performance of a contract in writing for the sale and conveyance of a tract of land consisting of about 50 acres, in the town of Concord, county of Erie, N. Y. The contract bears date and was executed on the 9th day of September, 1901, by Mary Wheeler, since deceased, as vendor, and Jay Northrup, since deceased, as vendee. By

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

the contract the vendor agreed with the vendee, "his heirs and assigns," that in consideration of $1, the receipt of which was acknowledged, and of the further sum of $2,500 to be paid, which the vendee, "for himself, his heirs and assigns," agreed with the vendor, "her executors and administrators," to pay or cause to be paid to the vendor, "her executors or administrators," at "the time of executing" the conveyance, she would "on the payment of the aforesaid sum," by deed "grant, sell, convey and assign" the premises in question to the vendee "and his heirs." Each party, by express provisions of the contract, became bound to the other for performance "in the penal sum of two thousand five hundred dollars." These are the only provisions of the contract aside from the description of the premises. It will be seen that no time for performance or with respect to the date from which the conveyance was to take effect or to be deemed to have been made is in any manner fixed or even referred to in the contract, nor is there any provision with respect to the payment of interest on the purchase price, nor is there any reference to any other agreement, transaction, or event from which these matters might be determined.

[1, 2] The consideration specified in the contract was the fair market value of the premises at the time the contract was made, and there was no material change in their value for years thereafter. No tender of performance was ever made by or in the right of the vendee until the 5th day of June, 1913, when the value of the premises had increased to about $4,000. Where the time for the performance of a contract is not specified therein, but the contract is valid and complete in all other respects, it is presumed that the parties intended it should be performed within a reasonable time, considering the circumstances under which it was executed, and the law, by implication, reads such intention into the contract as if it had originally been expressed therein. In such case it would be incumbent upon either party desirous of preserving any *legal* remedy or availing himself of a defense *at law* for a breach of the contract, to put the other party in default by tendering performance on his part and demanding performance by the other party within a reasonable time specified. Taylor v. Goelet, 208 N. Y. 253, 101 N. E. 867; Schmidt v. Reed, 132 N. Y. 108, 30 N. E. 373.

[3] Courts of equity, however, are not governed by the rigid rules of law, and even though the vendee may be within his strict *legal* rights under the contract, it is a well established and settled rule of equity jurisprudence that the remedy by specific performance is not a matter of right, but rests in the sound discretion of a court of equity, and should not be decreed if it would be inequitable to do so, and that in such case the plaintiff should be left to pursue such remedy, if any, as the law affords. Winne v. Winne, 166 N. Y. 263–273, 59 N. E. 832, 82 Am. St. Rep. 647; Stokes v. Stokes, 155 N. Y. 581–590, 50 N. E. 342; Stitt v. Ward, 142 App. Div. 626, 127 N. Y. Supp. 351; Byrne v. Fremont Realty Co., 120 App. Div. 692, 105 N. Y. Supp. 838. See, also, McClure v. Leaycraft, 183 N. Y. 36–41, 75 N. E. 961, 5 Ann. Cas. 45, and Batchelor v. Hinkle, 210 N. Y. 243, 104 N. E. 629.

[4] The vendee died on the 2d of March, 1908, leaving a widow and

two children, the defendants Raymond Northrup, an infant 19 years of age, and Maud Northrup Scott, and a last will and testament, leaving a life use of his residuary estate to his widow, with the remainder over to his children, in equal shares, and appointing his wife his executrix.

The question with respect to the time of performance first arose, so far as the evidence shows, between counsel for the vendor and the executrix of the vendee, on the 26th day of May, 1911. At that time the vendor, through her counsel, insisted that if either party desired performance by the other he was required to demand it within a reasonable time, and the executrix of the vendee claimed that the contract was not to be performed until the death of the vendor. Prior to that interview, and on February 8, 1911, counsel for the vendor wrote to Messrs, Ticknor, Pierce & Pomeroy, who represented the executrix of the vendee in two litigations pending between them, one of which had been decided by the Court of Appeals adversely to the vendor on the 15th of March, 1910, and the other had been decided adversely to her by the same court the day before the date of the letter, suggesting in connection with the adjustment of the costs in those actions and other pending litigation of the same nature that the executrix of the vendee "exercise her option" to purchase the premises, as his client was in need of funds. The counsel for the vendor does not fix the interview at the time fixed by the executrix of the vendee, but in the course of the interview he informed her, in effect, that his client had authorized him to call upon her and take title if she so desired, and he gave her 30 days within which to do so, informing her that if she did not pay the purchase price within that time his client would not convey the premises to her; and he further testified that on May 10, 1912, and on another occasion two or three months thereafter, he, by like authority of his client, gave the executrix of the vendee like opportunity and 30 days' notice, and that she failed to take action thereunder.

On these facts it requires no argument to demonstrate that if the decision of the issues depends upon the construction of the provisions of the contract in the light of these facts, the plaintiff cannot recover.

Simultaneously with the execution of this contract, the vendor executed and delivered to the vendee a lease of the premises in question and a tract of 75 acres adjoining them, and a deed of the 75 acres, and the vendee executed a lease of the 75 acres to the vendor. The learned counsel for the plaintiffs contends that the intention of the parties with respect to the time of performance is to be found in said deed and leases and in the circumstances attending the execution thereof, and he claims that it was the intention of the parties that the contract in question was not to be performed until the death of the vendor, which occurred on or about the 26th day of February, 1913.

The lease of the two tracts was, so far as it is necessary to consider its provisions, to have them worked on equal shares, and they are described as the vendor's dairy farm of 125 acres, and she also thereby leased to the vendee the use of her 15 cows then on the farm. The term was for the life of the vendor who reserved the house, in which

she then lived, and one-half an acre of ground, and horse barn, on the premises now in question, together with "the right to get fuel from the farm."

The vendor then resided on the 50 acres and continued to reside there, and the vendee, and the executrix, after his death, continued to work both tracts under the lease. The lease provided that if the lessee should fail to pay the rent—that is, to account to the vendor for her share as provided in the lease—the vendor might re-enter or resort to "any legal remedy."

It was also provided that if the tenant sublet or relet the premises without his landlord's consent in writing, he might be removed as a tenant holding over. The lease was also subject to termination, at the election of the tenant, for fire. It contained the usual clause by which the tenant agreed to surrender the premises at the expiration of the lease in as good condition, necessary wear and tear excepted, as when rented.

The conveyance of the 75 acres recites a consideration of $1 only, and was, by express provisions, made subject to the lease of the two tracts, and the grantee therein assumed and agreed to perform the covenants and agreements on his part contained in said lease.

The other lease was of the 75 acres, and it was executed by the grantee thereof in the deed, and his wife, to the grantor, and the term was for her life. It is recited therein that it was made "for a good and valuable consideration," but no rent was reserved, and it was therein provided, in effect, *that it should become operative only* in the event that the lessors failed to keep and perform their covenants and agreements in the other lease, or should, in the event that the lessee should, through infirmity of age, sickness, accident, or any other cause, become incapable of or unable properly to care for herself, fail faithfully and fully to maintain and support her, or cause her to be maintained and supported, where she then lived, including "all needful and necessary and proper food, meat and drinks, board and lodging and washing," and necessary clothing and medical attendance, or to take proper care of her and "in all things and ways" contribute to her comfort and health.

Mrs. Wheeler, the vendor, had known the wife of the vendee from childhood; and down to about two years prior to September 9, 1901, when the deed, lease, and contract were executed, the vendee had for a number of years occupied and worked a farm adjoining the 75 acres, and the vendor frequently visited his family and they visited her. At the time these instruments were executed the vendee was 39 years of age, and the vendor was a widow 69 years of age, without descendants, and her nearest blood relatives were nephews and nieces. She owned and had leased both tracts on shares, reserving for herself the use of the house in which she resided and the appurtenances, by a clause similar to that in the lease of both parcels to the vendee. In her advancing age, Mrs. Wheeler was desirous of continuing to reside on the 50 acres and of having some one in whom she had confidence take and manage the two parcels as one farm, "and look after and care for her when care and attention was necessary," and was willing to convey

the 75 acres in consideration of such an agreement by the grantee, and through a former tenant she made this proposition to the vendee, and at a subsequent personal interview between the parties they came to an agreement, and at the suggestion of the vendor, one Stanbro, whom she knew well and "reposed great trust and confidence in," and who was 70 years of age and a notary public, and who had been a justice of the peace, and had drawn legal papers for her husband, but was not a member of the bar, and was unknown to the vendee, was selected to reduce their agreements to writing. They called upon and advised with him, and he finally prepared the deed, leases, and contract, and they executed them.

In an action brought in this court May 5, 1906, by the vendor against the vendee and his wife to cancel the two leases and deed on the ground of fraud, and to require a reconveyance to her of any interest thereby acquired by the vendee, and to reform the *contract* so as to express the agreement actually made, which she claimed did not embody an agreement on her part to sell the premises, she alleged, in effect, that the execution of the four instruments constituted but a single transaction, and that she was induced to execute them by fraud, and that material provisions of the agreement actually made were omitted therefrom, and that the vendee had failed to perform his agreement with respect to providing and caring for her, her complaint was dismissed upon the merits with costs, and the judgment was affirmed by the Appellate Division and by the Court of Appeals. Wheeler v. Northrup, 123 App. Div. 913, 108 N. Y. Supp. 1150; Id., 198 N. Y. 530, 92 N. E. 1107. In that action the court found that the vendee moved into the house on the 75 acres and fully performed all covenants and agreements on his part to be performed by virtue of the said four instruments, or any of them; and also that in the year 1901 the vendee built a sugar house on the 75 acres at a cost of $40, and in the fall of 1902 he built a barn thereon at a cost of $1,228, and that the vendor furnished the material for the sugar house and agreed to pay $700 toward the cost of the barn, and for that she executed a note, drawn by said Stanbro, on October 23, 1902, by which she promised to pay that amount, with interest, to the order of Northrup "in the following manner, viz.: One dollar or more and interest on all unpaid sums on the 23d day of October in each year till the whole sum of seven hundred dollars and interest shall be fully paid." An action was brought by Northrup's executrix May 7, 1908, for the amount *then due* on the note, and she defended for want of consideration, but it was held that her interest in the products of the farm which were to be housed in the buildings afforded a consideration for her agreement to contribute toward the cost of building on Northrup's land, and the judgment was affirmed. Northrup v. Wheeler, 136 App. Div. 908, 120 N. Y. Supp. 1137; Id., 201 N. Y. 511, 94 N. E. 1096.

It does not seem that the rights or interests of the vendor were either clearly expressed or fully protected. If the grantee of the 75 acres failed to provide and care for her as he agreed in consideration for receiving the deed, she was given back, not the premises in fee, but merely a lease for life, and certainly the subsequent agreement by which she be-

came obligated to contribute largely to the erection of buildings on the land she had deeded to Northrup was not equitable. That such omissions, however, must, in the circumstances, be attributed to lack of legal knowledge and experience on the part of Stanbro is fairly to be inferred from the provisions of the lease of the 75 acres by Northrup to his grantor; and it was found in the action to cancel the instruments that the consideration for the conveyance of the 75 acres to him was his agreement to care for and support her and administer to her wants if she should be in need, as specified in the lease back to her of the land thus conveyed, with the understanding that such lease was to be operative only in the event that he failed to fulfill his said agreement to support and provide for her, or to perform his contracts and agreements contained in the other lease of both tracts.

Opposed to the arguments of the learned counsel for the plaintiff, based on the four instruments construed together, that the parties intended that the land contract was not to be performed until the death of the vendor, is the express provision thereof, reserving to the vendor, at the time of conveying, pursuant to the contract, an interest in part of the premises for her life. That provision clearly shows that it was within the contemplation of the parties that the contract might, at least, be fully performed during the life of the vendor.

There is no mention in the lease, or in the deed of the 75 acres, of the land contract, and I find nothing in these three instruments, so clearly indicating the probable intention of the parties with respect to performance of the contract as to warrant a construction different from that which the law requires, based on the contract considered by itself.

To hold that the vendor intended to leave it optional with the vendee to tender the purchase price, *without interest,* at any time during her life, or upon or after her death, and then to call upon her or her executor to convey good title unincumbered, would be most unreasonable, for such a construction would practically put the property out of her hands, and deprive her of any personal benefit therefrom if the vendee saw fit to defer paying the consideration. There is nothing to support a construction that the contract was not to be performed until her death, other than the fact that the leases executed at the same time were to terminate with her life, and the contract purported to bind the personal representatives of the parties. If the vendee had, by breach of any of his agreements, or by an election on account of fire, lost his rights under the lease, then it is not probable that the parties contemplated that his right to purchase the 50 acres would still continue in force. I think that they intended that the sale and conveyance of the 50 acres should be subject to the lease of both parcels, which it was intended should continue until the death of the vendor. That alone would not insure the right of the vendor to occupy the house and enjoy the other rights which she *reserved* from the lease. If she *conveyed* the 50 acres, subject to her rights under the lease, without reserving for her life use that part of the premises *excepted* from the lease, she would no longer be entitled to occupy the house. It was therefore necessary to make provision for reserving such life use. It may be said that since there was to be no express reservation of her rights un-

der the lease, it would, in the event she conveyed, be confined to the 75 acres. That point is not clearly covered by the instruments. In view of the fact that the instruments were formulated and drafted by a scrivener, little weight is to be attached to any formal words employed. The judicial construction of the other instruments is now before the court only in so far as it may aid in the construction of the contract for the sale of the land. It is doubtful whether any construction could be given to them that would be consistent with all of them or free from doubt. It will not do, therefore, on the deed and leases, to speculate as to the intention of the parties with respect to the time the contract was to be consummated by payment of the purchase price and conveyance of the land, and the agreement of the parties with respect to the sale and purchase of the 50 acres must be given effect as the parties have reduced it to writing in the form of the contract.

If the vendor were still living and resisting specific performance after she has been obliged to raise money by mortgaging the premises on the failure of the vendee's executrix to perform and after the value of the premises has so materially increased, it seems quite clear to me that the court would not, on these facts, require her to convey the premises on payment of the consideration specified in the contract. Her executor stands in her right.

It follows that the complaint should be dismissed upon the merits, but the rights of the parties were so involved and doubtful that no costs should be imposed upon plaintiffs.

Judgment accordingly.