Frederick J. Wheeler and Others, as Trustees of Union Free School No. 1, Milton, Appellants, *v.* The Standard Oil Company of New York, Respondent.

Third Department, March 15, 1933.

*Brackett & Eddy [Spencer B. Eddy* of counsel], for the appellants.

*Frank H. Deal,* for the respondent.

HILL, P. J. Thomas Kerley, as trustee, and Annie T. Chew leased a small portion of a vacant lot, of which they were owners, to defendant. The lease was in writing and was recorded in the county clerk's office. It contained an exclusive option to the lessee to purchase the premises at any time during the term which ended January 1, 1931. Best, an employee of defendant, conducted the oral negotiations for the lease, which was prepared at defendant's New York office. As first presented, lessors objected to certain of the terms, whereupon it was returned to the office, corrected and returned to Best who presented it for execution. During the term of the lease and after much local discussion and a vote in the school district, plaintiffs began negotiations to purchase the entire Kerley-Chew tract, including the land leased to defendant. The trial court has found, in substance, that during the course of the negotiations, Best stated to plaintiffs' president that defendant, the Standard Oil Company, did not stand in the way of public improvements, and that the option to purchase would not be exercised, but the land vacated at the termination of the lease. It was generally recognized that the tract was not adapted to school purposes with a gasoline business on the leased premises. It appears that at about the same time defendant bought land across the street and a short distance away, that was adapted to the location of a gasoline station, and to which the fixtures and buildings standing on the leased premises could be moved. Plaintiffs thereafter purchased the entire tract, acting, as found, " in good faith and in the belief that they were acquiring full title to said lot," and erected a building, designed for the kindergarten and lower school grades, costing more than $117,000. However, within the time provided by the lease, defendant gave notice of its intention to exercise its option to purchase, and at the termination of the lease refused to vacate, claiming that Best did not have authority to release the option. The lack of authority was found by the trial court.

This action was brought to eject the defendant from the premises. The answer contains a counterclaim asking a decree of specific performance requiring plaintiffs to convey pursuant to the option which defendant had accepted. Plaintiffs' complaint for ejectment has been dismissed, the relief asked in defendant's counterclaim denied, with an alternative award of damages, to be fixed by a referee, and defendant given leave to occupy the premises and conduct its gasoline business thereon " until the damages for the breach of contract are established, confirmed and paid " by plaintiffs.

Plaintiffs purchased the property in good faith, believing that the gas station would be moved when defendant's lease was ended. The mistake in believing Best spoke with the approval and consent of defendant was excusable under the circumstances. (*McClure* v. *Leaycraft*, 183 N. Y. 36; *Margraf* v. *Muir*, 57 id. 155.) The site was not adapted to school purposes if defendant owned and operated its gasoline business on the corner of the lot, because of the danger to young children through the continual approach of automobiles and the storage of inflammables; also from an aesthetic standpoint, it would be out of keeping that such a business should be operated on what would appear to be a part of the school grounds. Considering plaintiffs' expenditure, specific performance would entail damage and loss out of all proportion to defendant's benefit. Under such conditions, it should not be granted. (*Kleinberg* v. *Ratett*, 252 N. Y. 236; *McClure* v. *Leaycraft, supra; Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311; *Willard* v. *Tayloe*, 8 Wall. 557; *Baily* v. *DeCrespigny*, L. R. 4 Q. B. 180.)

It was error for the court to award damages against plaintiffs in lieu of the equitable relief asked. A claim for damages in the alternative may be joined with a prayer for equitable relief, and if the equitable relief be denied, the action will be retained and the issues as to breach of contract and damages tried as an action at law. (*Haffey* v. *Lynch*, 143 N. Y. 241.) But damages may be awarded only against a party liable therefor, and when the court has jurisdiction of such a party. (*Saperstein* v. *Mechanics & Farmers Savings Bank*, 228 N. Y. 257, 261.) The deed to plaintiffs made them the assignees of their grantors' rights under the lease with defendant, and, if the option was exercised, equitable owners of the consideration to be paid, with defendant the equitable owner of the real property leased. (*Epstein* v. *Gluckin*, 233 N. Y. 490; *Elterman* v. *Hyman*, 192 id. 113.) The court having refused its aid to convert defendant's equitable right into a legal estate, was without power to grant alternative damages unless there had been an assumption by plaintiffs of the obligation to carry out the terms of the contract made by Kerley and Chew with defendant. Chief Judge POUND, writing in *Langel* v. *Betz* (250 N. Y. 159) states (pp. 161 and 162): " The mere assignment of a bilateral executory contract may not be interpreted as a promise by the assignee to the assignor to assume the performance of the assignor's duties, so as to have the effect of creating a new liability on the part of the assignee to the other party to the contract assigned. The assignee * * * is under no personal engagement * * * where there is no privity between them," and (p. 164): " The law remains that no promise of the assignee to assume the assignor's duties is to be

inferred from the acceptance of an assignment of a bilateral contract, in the absence of circumstances surrounding the assignment itself which indicate a contrary intention." Here, as in the *Langel* case, there was no novation and no express assumption by plaintiffs of the obligations of the assignor and grantor. We are not required to decide or even consider the liability for damages as between the original parties to the contract.

Plaintiffs' complaint for ejectment should not have been dismissed as their title was valid and carried the right of immediate possession. The possible right of defendant to damages in an action at law against persons not parties to this suit furnished no ground for continuing defendant in possession until the action against the other parties has been tried and determined.

The judgment should be reversed on the law and facts, with costs, except in so far as it dismisses defendant's counterclaim for specific performance, and plaintiffs should have judgment in accordance with the relief asked in the complaint for ejectment against the defendant, together with damages for the occupation of the premises, at the rate of twenty-five dollars per month from January 1, 1931, with costs.

All concur.

The judgment is reversed on the law and facts, with costs, except in so far as it dismisses defendant's counterclaim for specific performance, and plaintiffs have judgment in accordance with the relief asked in the complaint for ejectment against the defendant, together with damages for the occupation of the premises at the rate of twenty-five dollars per month from January 1, 1931, with costs.

Findings of fact numbered eleventh, twelfth, seventeenth, eighteenth, nineteenth, twentieth, twenty-fifth, thirty-first and thirty-second are reversed, and this court makes a new finding that Agnew Best, an employee of the Standard Oil Company of New York, was the only person connected with that company who negotiated concerning real estate at Ballston Spa and that his statement made to the president of the board of education, as found by the trial court in its forty-first finding, justified the belief by the plaintiffs that the option of defendant was not to be exercised, which with the findings of the trial court numbered fortieth, forty-first, forty-second, forty-third and forty-fourth, contained in the decision, sustain the court in its denial to the defendant of equitable aid by way of specific performance.