BILLIET *v.* AULGUR

COVENANTS—SUBDIVISION—ROADWAYS.

> Injunction restricting construction of roadway on a lot located within a subdivision restricted to "no more than one single dwelling house on a lot \* \* \*", as a means of egress and ingress to property abutting the subdivision which is to be developed according to restrictions observed within the subdivision, *held*, improperly granted where there is no evidence that plaintiff or any other subdivision resident would be adversely affected or lose full use and enjoyment of his property due to construction of the roadway; an injunction that bears heavily on the defendant without benefit to the plaintiff will always be withheld as oppressive, and therefore it must be factually determined that the road will adversely affect plaintiff's property and, even more important, that there are fair as distinguished from carping or trifling reasons for granting the injunction.

Appeal from Macomb, Frank E. Jeannette, J. Submitted Division 1 June 5, 1969, at Detroit. (Docket No. 4,392.) Decided July 29, 1969.

Complaint by James Billiet against Lawrence Aulgur, Ralph Batista and Charm-Way Company, a Michigan corporation, for an injunction to restrain defendants from constructing a roadway on property abutting plaintiff's lot. Injunction granted. Defendants appeal. Remanded for rehearing.

*Stavoe & Deegan,* for plaintiff.

*Towner, Rossin & York,* for defendants.

REFERENCE FOR POINTS IN HEADNOTE
42 Am Jur 2d, Injunctions §§ 29, 70.

Before: Holbrook, P. J., and McGregor and
Bronson, JJ.

Bronson, J. Defendants own property in and di-
rectly behind a residential subdivision. It is their
intent to develop the property situated behind the
subdivision. To reach this land defendants propose
to situate a permanent hard-pavement roadway
through their property in the subdivision permitting
access to their parcel of land behind the subdivision
via the street leading into the subdivision from 24
Mile Road. Plaintiff, a property owner in the sub-
division, filed suit in the Macomb county circuit
court seeking a preliminary injunction and restrain-
ing order that would prevent defendant from erect-
ing a connective roadway through subdivision lot
118. Plaintiff asserted that the use of lot 118 for
purpose other than the construction of a dwelling
house would constitute a violation of the building
restrictions contained in the deeds for lots which
were a part of the subdivision in which both plain-
tiff's property and lot 118 lie. The circuit court
issued a temporary restraining order and then held
a hearing to show cause why the temporary order
should not be continued. Following the show cause
hearing the court issued a perpetual injunction
against defendants' constructing of a roadway
through lot 118. From this perpetual injunction,
defendants appeal.

Plaintiff's property, subdivision lot 119, fronts on
Antoinette Court. Defendants' property within the
subdivision also fronts on Antoinette Court. That
street is a cul-de-sac perpendicular to, and south of,
24 Mile Road. Plaintiff's property is south of that
of defendants' and thus no traffic entering Antoinette
Court which would be proceeding to defendants'
intended roadway would have to pass in front of

plaintiff's house. Defendants propose to construct their roadway 20 feet north of the lot line common to their lot and that of plaintiff. The 20-foot strip is to be maintained with grass and foliage.

We find the case of *R. R. Improvement Association* v. *Thomas* (1965), 374 Mich 175, to be controlling. In *Thomas* the defendant also sought to construct a roadway for the purpose of developing land outside the subdivision. Similar building restrictions were contained in the deeds of the property defendant desired to use for a roadway. There the court stated, pp 182, 183:

"The pinpointed fact is that appellant has built her case upon more recent *Bove* v. *Giebel,* 169 Ohio St 325 (159 NE2d 425) (followed in *McInerney* v. *Sturgis,* 37 Misc 2d 302 [234 NYS2d 965]). The *Bove Case* lays down what the court in *McInerney* said (p 306) is 'an equitable rule to be applied to cases of the instant kind.' The facts in *Bove* are much like those with which we—in the instant case—are thus far acquainted. The court reasoned and ruled:

" 'As to property in a subdivision, that is restricted to use for residence purposes only, there have been decisions preventing its use as a means of ingress to and egress from property outside the subdivision that is not restricted to the same extent as the property within the subdivision. See 14 Am Jur, Covenants, Conditions and Restrictions § 255, p 635, and supplement thereto; 25 ALR2d 904, 175 ALR 1191, 1207, 39 ALR 1083. However, we have found no cases involving a situation such as presented by the instant case where the property outside the subdivision will be restricted by its owners to the same extent as that within the subdivision. *Hence, our conclusion is that the owners of a lot in a subdivision, which lot is restricted to use "for residence purposes only," may use such lot as a means of ingress to and egress from adjoining land that*

*they own outside the subdivision if they impose upon such outside land the same restrictions that are applicable to lots within the subdivision.'* " (Emphasis added.)

The Supreme Court thereafter concluded in *Thomas* at pp 183, 184:

"We agree, but with reservations. Before applying *Bove's* rule to this case, the trial court should be informed by due testimony whether and how, if at all, the present residential advantages enjoyed by Brookside lot owners will or might be adversely affected by appellant's proposal; whether a new traffic burden or maintenance problem will thereby be cast on dead end South Hills road, or for that matter, upon any other part of the subdivision's roadways; whether the private roads of the subdivision as dedicated have since become public roads; whether appellant's intended specifications for grading of the west 70 feet of lot 15 and of location on parcel 3 of the two proposed homes will in any way, aesthetically or otherwise, impair the restriction-assured enjoyment of home ownership in the subdivision; whether strict conformity with the restrictions has been waived (as claimed by appellant in her vain motion to set aside summary judgment) and, in general, whether there are fair distinguished from carping or trifling reasons for denial to appellant of that which is sought by her.

"*Cook* v. *Murlin,* cited above, sets the tone for due inquisition on remand. Would grant of relief to appellant harm appellees in any way? If so relief should be denied. Otherwise relief should be granted in accordance with the ascertained equity of the case. *Murlin* proceeds (pp 559, 560):

" 'If plaintiffs' claim were to be upheld, it would result in doing a great injustice to defendants, without any corresponding benefit to plaintiffs. To permit this driveway to stand and be used as a means of reaching East avenue from defendants' lands in the rear of the Golfside Acres tract, no possible

harm can come to plaintiffs, and they made no at-tempt on the trial to prove damages. To close this private driveway, which would result from the sus-taining of this judgment, defendants would be de-prived of an easy, short, and convenient way of reaching East avenue over their own property, and would be compelled to adopt, as their only way of ingress to and egress from the 11-acre tract, the inconvenient, dangerous, and much longer route by way of the Kelly road, and over the Rochester & Syracuse double-track railroad. In the case of *McClure* v. *Leaycraft,* 183 NY 36, 44 (75 NE 961, 963, 5 Ann Cas 45), the Court of Appeals said:

" ' "An injunction that bears heavily on the de-fendant, without benefiting the plaintiff, will always be withheld as oppressive." ' "

Admittedly, there are a number of facts in the present case which might distinguish it from *Thom-as.* However, these distinctions do not materially vary from those presented to insulate this case from the rule announced in *Thomas.* While the distinc-tions may be important factors with regard to the question of the harm that may be caused to the owners in the subdivision subject to the original restrictions, they do not prevent the initial applica-tion of the general rule approved in that case. The clause involved in *Thomas* read as follows:

" '(b) That each lot and buildings thereon shall be used only for strictly private residence purposes, and no building shall be moved onto any lot or lots in said plat.' " p 178

The clause involved in the present case reads as follows:

"No more than one single dwelling house shall be erected on one lot of the original recorded subdivi-sion, except Mound Road frontage lots may be used for duplexes and business, provided that when such

uses are commenced they do not conflict with the lawful Governmental zoning laws."

If anything, the restriction in this case is less restrictive than that involved in *Thomas*.

The only requirement that apparently must be met before the rule may be applied is that the restrictions of the two tracts be substantially identical. Defendants have apparently met that burden. On that basis the only question remaining is whether the testimony in this case provided sufficient information to satisfy the requirements established by *Thomas* at pages 183 and 184, justifying the non-application of the so-called *Bove* rule. (See *Thomas, supra,* pages 183 and 184.)

A review of the transcript does not reveal any testimony as to "whether and how, if at all, the present residential advantages enjoyed by   *   *   * lot owners will or might be adversely affected by appellants' proposal." Plaintiff merely testified that he did not want a road at the proposed location and that he did not want a corner lot. No positive testimony was presented as to exactly how the construction of this roadway would injure plaintiff's, or any other resident's, use and enjoyment of their property. In this same light there was no positive testimony in the record that would indicate that an unfair traffic burden would be created and there was no real indication in the record that plaintiff's objections to the roadway constituted any more than carping or trifling reasons for denial of defendants' construction of the roadway over lot 118.

The source of difficulty in the present case is the differing emphasis placed by the trial judge and each litigant on certain language in *R. R. Improvement Association* v. *Thomas, supra*. In *Thomas* the Court states, pp 183, 184:

"* * * [T]he trial court should be informed by due testimony · * * * in general, whether there are *fair distinguished from carping or trifling reasons* for denial to appellant of that which is sought by her.

"*Cook* v. *Murlin,* cited above, sets the tone for due inquisition on remand. *Would grant of relief to appellant harm appellees in any · way?* * * * *Murlin* proceeds (pp 559, 560):

" 'If plaintiffs' claim were to be upheld, it would result in doing a great injustice to defendants, without any corresponding benefit to plaintiffs. * * * In the case of *McClure* v. *Leaycraft,* 183 NY 36, 44 (75 NE 961, 963, 5 Ann Cas 45), the Court of Appeals said:

" ' "*An injunction that bears heavily on the defendant, without benefiting the plaintiff, will always be withheld as oppressive.*" ' "   (Emphasis added.)

In *Thompson* v. *Enz* (1967), 379 Mich 667, the Supreme Court dealt with riparian proprietors who proposed to dig artificial channels and then subdivide the back properties so that each lot owner would have waterway access to the lake. Justice BRENNAN, in his dissenting opinion in *Thompson,* addressed himself, not to the question of riparian rights of the subdividers but, rather, to the potential harm done to the riparian rights of other owners of lakefront property.

"It would seem that if the owner of riparian lands can lawfully dig a canal onto his own property, for his own use, he can grant easements in and to the canal to nonriparian property owners. The real issue in this case, then, is: Can this defendant lawfully dig this proposed canal on his property?

"Absent statutory regulations to the contrary, mere alteration of the natural shoreline does not *per se* adversely affect the riparian rights of other owners of lake front property. * * *

"Whether the dredging of any given canal by a riparian owner constitutes an infringement upon the riparian rights of the other riparian owners is a question of fact.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"In short, these riparian plaintiffs have the burden of alleging and proving some actual damage to themselves that will flow from the dredging of the canal." 379 Mich 667, 697.

We feel that the test to be applied is not "harm [to] appellee[s'] in any way" but, rather, whether or not there is a non-trifling serious damage which would warrant "an injunction that bears heavily on the defendant". We therefore remand for testimony and determination as to what actual detriment construction of the proposed roadway will cause plaintiff. As plaintiff was suing only in his own right and not on behalf of other property owners in the subdivision, it must be shown that any added traffic will harm plaintiff.

This in no way is meant to bar any class action or impleading of other lot owners as co-plaintiffs.

Remanded for further proceedings not inconsistent with this opinion.

All concurred.