**ST. LO CONST. CO., Inc., v. KOENIGSBERGER, et al.**

No. 9877.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 8, 1948.

Decided Feb. 21, 1949.

EDGERTON, Circuit Judge, dissenting.

———————◆———————

Mr. Michael J. Keane, Jr., of Washington, D. C., with whom Mr. Karl Michelet, of Washington D. C. was on the brief, for appellant. Messrs. Morton Harrison Wilner and John James Bernard, both of Washington, D. C., also entered appearances for appellant.

Mr. Henry G. Fischer, of Washington, D. C., with whom Messrs. Ewing Laporte and Geoffrey Creyke, Jr., both of Washington, D. C., were on the brief, for appellees. Messrs. John W. Willis and Irving R. Panzer, both of Washington, D. C., also entered appearances for appellees.

Before EDGERTON, CLARK and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellees Koenigsberger, et al., brought a civil action in the District Court, seeking an injunction which would restrain appellant Saint Lo Construction Company, Inc., from erecting on certain real property any building except a private dwelling house.

26

After trial without a jury, the court entered a decree as prayed, holding that the issue presented was res judicata in favor of the plaintiff. This appeal followed.

The property in question is a subdivision created in 1907, in the deeds to which was a covenant that any houses upon the several premises should be built and used for residence purposes exclusively and that no apartment house should be erected thereon.

In 1941 the present appellant's predecessor in title filed a civil action in the District Court, naming as defendants all the property owners in the subdivision and praying that the restrictive covenant be cancelled, on the ground that the neighborhood had so changed that the covenant was no longer applicable. The pre-trial order recited the issue thus:

"Plaintiff claims to be the owner of certain lots in the District of Columbia which are part of a subdivision, and that it is entitled to have the restrictive covenant set aside because of changes in the neighborhood and because of changes in the use of properties in the neighborhood, because it would be inequitable to enforce the covenant because of such change."

Trial was had before the court without a jury, and in December, 1943, judgment was entered dismissing the complaint. The trial judge did not make findings of fact or enter of record his conclusions of law.

The present appellant company bought the property after the foregoing litigation and with full knowledge of it. It prepared plans and procured a permit to build an apartment house on the premises. Koenigsberger and his wife are the owners of two lots in the subdivision, upon which they have their home. They brought this action for injunction on behalf of themselves and all other owners of property in the subdivision. They alleged the covenant, the prior litigation, and the threatened construction of the apartment building. The defendant, answering, admitted the covenant and alleged a change in the neigh-

borhood, particularly that the entire area on the opposite side of the street from the property in question has been developed into a commercial area and the street itself changed into an arterial traffic highway, and, further, that the zoning was changed some time ago by the District authorities so as to permit the construction of apartment houses and the property is now zoned for commercial use. The defendant concluded that "because of the matters and things hereinbefore alleged, the restrictive covenants in relation to the defendant's parcels of land are no longer capable of serving the purposes for which they were imposed many years ago; that the vicinage has so changed in its character and environment and in the uses to which defendant's property may be used as to make it unfit or unprofitable for use at all if the restrictions be enforced and to grant injunctive relief would be a great hardship on the defendant and of little, if any, benefit to the plaintiffs; * * *"

Upon the trial, the judge received the evidence as to the prior litigation and such evidence as was offered of changes in conditions since December, 1943, the date as of which the judgment in the prior case was entered, but he refused to admit evidence of facts and conditions prior to that date. Full proffers of such evidence were made by the defendant-appellant.

The trial court concluded that the issues in the present case, so far as they relate to conditions as of December, 1943, are res judicata by reason of the judgment in the prior litigation, and found that no evidence of substantial change since that date had been presented. Therefore, it granted the injunction prayed by the complaint.

We see no escape from the conclusion reached by the District Court that the judgment in the prior proceeding is res judicata of the issue in the present case. We need not elaborate the doctrine. Ample discussion will be found in the cases and authorities cited below.[1] Even if it be held

[1] Mercoid Corporation v. Mid-Continent Inv. Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Southern Pacific R. Co. v. United States, 1897, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355, 377; Cromwell v. County of Sac, 1877, 94 U.S. 351, 24 L.

Ed. 195; Brown v. Brown, 1941, 74 App. D.C. 309, 122 F.2d 219; The Evergreens v. Numan, 2 Cir., 1944, 141 F.2d 927, 152 A.L.R. 1187, certiorari denied, Evergreens v. Commissioner of Internal Revenue, 1944, 323 U.S. 720, 65 S.Ct. 49, 89

that the present cause of action is not the same as that in the former suit, since this one is to restrain breach of the covenant whereas that one was to invalidate the covenant, nevertheless the basic issue in both is the same. That issue is whether the neighborhood has so changed that the covenant is no longer properly effective.

■■ In the prior proceeding, the trial court made no findings or conclusions but simply entered judgment. But the doctrine of res judicata antedates the time when courts began to state the findings of fact and conclusions of law and, moreover, applies where general verdicts are rendered by juries. It is established that for purposes of res judicata the pleadings are examined to ascertain the issues involved and determined.[2] It cannot be held that unless a judgment recites the several determinations of fact upon which it is premised, it is not res judicata of the issues in the case.

The statements to be found in some of the authorities, that an issue must actually be litigated and determined, in order to be res judicata in a later action, and that the burden of proof rests upon the party who relies upon a former judgment, to show that the matter was so litigated and determined, are true only within limits. They do not, and cannot, mean that a person relying upon a judgment must probe the mind of the judge or invade the jury room to ascertain the processes by which the result was reached. And they do not mean that we may speculate as to what occurred in the recesses of judicial contemplation. The doctrine of res judicata is a matter of public policy and public purpose. It must be applied as such. In the case at bar, these possible questions do not arise. The issue upon which the former action was brought, litigated and determined, was an alleged change in the neighborhood such as to render the covenant no longer effective. The same issue is the basis for the present action.

■■ It is said that the prior judgment was merely that the covenant be not invalidated so as to relieve the owner from liability for damages for breach, but that an injunction might be denied in the present case, leaving the owner free to breach the covenant and then pay damages. This is merely to say that the present appellees should be denied injunctive relief and left to their remedy at law for damages. The proposition was advanced and denied in Springer v. Gaddy.[3] If the argument were valid, covenant such as restrictions on building lines, minimum cost of buildings, use of land, etc., would be of no effect, since any recalcitrant builder could violate them, and the other landowners would be left to the dubious recompense of provable damages. To preclude equitable protection of an equitable right, the remedy at law must be adequate. Actual damages would be difficult, if not impossible, to demonstrate by one property owner against his neighbor who built beyond the covenanted line; or by a home owner three or four blocks distant from a square forbidden by covenant from commercial use. Equity views the injury rather than the damage. Moreover, how could the other property owners recover damages if the covenant, which is the sole premise for damages, is not enforceable? To reach the conclusion suggested by appellant, it would be necessary to hold that the validity of this covenant is so different from its enforceability that judicial determination of the former is not determinative of the latter, even where the issue of fact upon which the two determinations rest is the same. We cannot so hold. The constitutional and statutory provisions involved in Hurd v. Hodge,[4] which made the difference between validity and enforceability in that case, are not in this one.

---

L.Ed. 579; Henderson v. United States Radiator Corporation, 10 Cir., 1935, 78 F.2d 674. See also Moschzisker, Res Judicata, 38 Yale L.J. 299 (1929); 2 Freeman, Judgments §§ 627, 674–677, 5th ed. 1925; Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1 (1942); Restatement, Judgments § 68 (1942).

2 Gill v. Gill, 1945, 79 U.S.App.D.C. 357, 147 F.2d 154.

3 1939, 172 Va. 533, 2 S.E.2d 355. Other authorities are to the same effect; see Pomeroy, Equity Jurisprudence § 1342, 5th Ed.1941.

4 1948, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187.

It seems to us that the issue whether this neighborhood has so changed as to make the covenant invalid is exactly the same as the issue whether the neighborhood has so changed as to make the covenant non-enforceable. It follows that the prior litigation was res judicata of the present action, as of December, 1943.

It is said that the holding of the District Court that there is no evidence of substantial change in the neighborhood since December, 1943, was clearly erroneous and, thus, reversible error under the rules, because the proffered evidence showed 59 per cent more vehicular traffic on the Avenue in December, 1947, than in June, 1943. We do not see how the court's finding can be held clear error. This court had before it in 1934 this same contention in respect to this same neighborhood, the parcel being on the west side of the Avenue.[5] We then said that a substantial increase in traffic is of little significance, since it might well be that there had been a similar increase in all sections of the city. In the present case, the comparison presented is even less impressive, because June, 1943, was in the midst of the most rigid restrictions upon the use of gasoline and the manufacture of automobiles, and December, 1947, was after that period. It would be surprising if there were not a general increase in traffic of 59 per cent or more in all sections between those two dates.

There were some changes in the commercial area across the Avenue from this property, but no new business property or enlargement of that area since December, 1943, was shown.

Owners of restricted property adjoining, or across the street from, an unrestricted area can almost always present an equitable and reasonable case for lifting the restriction on their property. As between two pieces of property, side by side or across the street from each other, there is frequently little reason for different treatment. But restrictions, whether by covenant or by zoning regulation, necessarily fall within fixed lines. One side of the line is commercial and the other side non-commercial. Oftentimes that rule yields harsh results.

A property owner next door to a commercial development often suffers. But if intangible considerations require the line to be extended to include him, his neighbor takes the place next to the commercial area. The problem is not thereby solved; it is merely shifted. So the existence of the commercial area across the Avenue may make the restrictive covenant in this case very harsh. But if the restriction be lifted from this particular property, the next adjoining residential property would then be the recipient of the same harsh treatment. The line as now fixed falls where it was placed by contract before this appellant bought the property. The validity of the restriction as presently fixed was tried to a final judgment by appellant's predecessor in title. We cannot avoid the application of the doctrine of res judicata merely because we might be presently persuaded that the court in that earlier case erroneously found the facts or reached an erroneous conclusion.

It is said that the restriction makes the property practically worthless to the owner. But that owner bought the property with full knowledge of the restriction and of the prior litigation holding it valid under conditions in 1943. Moreover, the effect of the restriction upon the value of all the other residential property in the neighborhood must also be considered. The worth of this parcel to its owner is not the sole consideration of the court in a contest of this sort.

The judgment of the District Court is affirmed.

EDGERTON, Circuit Judge (dissenting).

Appellant's lot extends along the east side of Connecticut Avenue, one of Washington's main thoroughfares, from Northampton Street to Oliver Street. It is not disputed that this was a quiet neighborhood when the covenant was made but has since become so unsuitable for private dwelling purposes that the injunction makes the lot practically useless to appellant and the community. The court's conclusion, that the judgment in the former suit for cancella-

[5] Kenealy v. Chevy Chase Land Co., 1934, 63 App.D.C. 327, 72 F.2d 378.

tion requires an injunction now, involves these propositions among others: (1) if a restrictive covenant is valid it must be enforced by injunction, and (2) the neighborhood did not become substantially less suitable for private dwellings during the interval between the two suits. I think (1) an error of law and (2) an error of fact.

The complaint in the former suit asked the court to cancel the covenant. The court dismissed that complaint without giving reasons. No doubt it thereby adjudged the covenant valid. But it did not and on the pleadings could not adjudge that the covenant should be enforced by injunction. What was not adjudged and could not be adjudged did not become *res judicata.*

The character of the neighborhood and the extent of change were relevant not only to the question whether the covenant was valid, which the court decided in the cancellation suit, but also to the question whether it would be equitable to enjoin the erection of an apartment house (or other violation of the covenant), which the court did not decide or have before it. But this does not make the two questions one. Neighborhood changes which may make it inequitable to enjoin a particular violation of a covenant at a particular time may not make it inequitable to impose damages for the same violation,[1] or to enjoin a different violation, or even to enjoin the same violation at a different time. In other words, to say that a proposed violation of a covenant should not be enjoined is not to say that the covenant is invalid and should be cancelled. Conversely, to say that a covenant should not be cancelled is not to say that a particular violation, or any other, should be enjoined.

Though a covenant is both valid and, like the one here, of a sort usually enforceable by injunction, no injunction is granted if it would be of little use to the plaintiff, very hard on the defendant, and harmful to the public. Damages are then the only available remedy. In the case of a restrictive covenant, as in many other cases, the remedy of damages, whether or not it happens to be valuable, is technically called inadequate and equity, unless limited by Constitution or statute, has *jurisdiction* to grant an injunction. But "an injunction is, as it always has been, 'an extraordinary remedial process which is granted, not as a matter of right, but in the exercise of a sound judicial discretion.' Morrison v. Work, 266 U.S. 481, 490, 45 S.Ct. 149, 153, 69 L.Ed. 394." [2] This rule of equity is so fundamental that the Supreme Court has enforced it where statutory language had seemed to us to obviate it. The Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., provided that when certain violations were shown "a permanent or temporary injunction, restraining order, or other order shall be granted without bond." [3] Because of that language we held in the Hecht case, Judge Groner dissenting, that "an injunction or other order is to be granted as of course when violations of the Act are found." [4] The Supreme Court held without dissent that we were wrong. It said: "A grant of *jurisdiction* to issue compliance orders hardly suggests an absolute duty to do so under any and all circumstances. We cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made. * * * We are dealing here with the requirements of equity practice with a background of several hundred years of history." [5]

The court suggests that appellant's proposed building would reduce the value for residence purposes of the lots east of it and thus gradually undermine the covenant over the whole area. I think it more

---

[1] This was held or suggested in Jackson v. Stevenson, 156 Mass. 496, 31 N.E. 691, 32 Am.St.Rep. 476; McClure v. Leaycraft, 183 N.Y. 36, 75 N.E. 961, 5 Ann.Cas. 45; Amerman v. Deane, 132 N.Y. 355, 30 N.E. 741, 28 Am.St.Rep. 584; and Bull v. Burton, 227 N.Y. 101, 124 N.E. 111. Dean Pound has criticized these cases. 33 Harv.L.Rev. 813, 820.

[2] Mr. Justice Frankfurter, concurring, in Hurd v. Hodge, 334 U.S. 24, 36, 68 S.Ct. 847, 853.

[3] § 205(a), 56 Stat. 23, 33, 50 U.S.C. A.Appendix, § 925(a).

[4] Brown v. Hecht Co., 78 U.S.App.D. C. 98, 101, 137 F.2d 689, 692.

[5] Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754.

30

likely that the building would increase the value for residence purposes of those lots, because it would screen them from Connecticut Avenue. But this matter is not for us to decide. The District Court should consider it, along with all other relevant circumstances, in exercising its discretion on the question whether it is or is not equitable to grant an injunction. In the cancellation suit the court could not exercise its discretion on that question because the question was not before it. In this injunction suit the question was before it and it failed to consider the question. This failure would have been erroneous even if the court had decided in the present suit that the covenant was valid.

It was not less erroneous because the validity of the covenant was not decided in this suit but in a former suit. On the contrary that fact, in my opinion, makes the appealed judgment erroneous for a further reason. If the covenant was valid at the time of the suit for cancellation it does not follow that it remained valid. The District Court recognized in this injunction suit that if changes since the date of the cancellation suit were "substantial * * * it would be proper to permit further testimony to show changes [before that date] in order that the Court might determine whether the changes shown to have occurred before and after that date would make it inequitable to enforce the covenants." [6] The court found there was no substantial change since 1943. This finding seems to me clearly erroneous.

In June 1943, 9,500 vehicles used this part of Connecticut Avenue on an ordinary day. In December 1947, 16,000 vehicles did so, though there is less traffic in winter than in summer. It seems a fair inference that traffic approximately doubled between 1943 and 1948. That gasoline was rationed in 1943 does not greatly reduce the importance of the fact that in 1943 the place was, and was likely to remain for an indefinite time, not more than half as busy and noisy as in 1948. A witness who lived close by described the increase in traffic as "tremendous." Another said "the flow of traffic * * * is almost continuous from about 6:30 or 7 a.m. until well after midnight. Especially on Sundays and holidays the traffic is very bad all day and all night." Not only traffic but business activity in the neighborhood increased considerably between 1943 and 1948. There is now a "very active * * * commercial island" on the opposite side of Connecticut Avenue. Liquor stores, a shoe store, and a furniture repair shop have been opened. Commercial buildings have been remodeled and enlarged. Taken together, the changes since 1943 seem to me clearly substantial.

---

[6] Accord, Hurd v. Albert, 214 Cal. 15, 3 P.2d 545, 76 A.L.R. 1348. Cf. Williamson v. Grider, 97 Ark. 588, 135 S. W. 361.