380 F.2d 69
 John THOMAS, William McCoy, John Salters, Isaac Sizemore,
Ray Trantham, Ellis Coleman, Jr., Lee Looney, John
Yates, and Charles Taylor, Appellants,
v.
CONSOLIDATION COAL COMPANY, a Corporation, (POCAHONTAS FUEL
COMPANY DIVISION)and the International Union, United Mine
Workers of America, an UnincorporatedAssociation, (District
29) and Local Union No. 9690, United Mine Workers ofAmerica,
anUnincorporated Association, Appellees.
 No. 10788.
 United States Court of Appeals Fourth Circuit.
 Argued Jan. 10, 1967.
Decided May 15, 1967.
 
 1
 D. Grove Moler, Mullens, W. Va., for appellants.
 
 
 2
 Harry G. Camper, Jr., Welch, W. Va. (John W. Gillespie, Tazewell, Va., Robert D. Bailey and Bailey, Worrell, Camper & Viers, Pineville, W. Va., on brief), for Consolidation Coal Co.
 
 
 3
 M. E. Boiarsky, Charleston, W. Va. (Harrison Combs, Washington, D.C., and James K. Edmundson, Beckley, W. Va., on brief), for Unions.
 
 
 4
 Before HAYNSWORTH, Chief Judge, BRYAN, Circuit Judge, and KAUFMAN, District Judge.
 
 FRANK A. KAUFMAN, District Judge:
 
 5
 Plaintiffs, nine former employees of Consolidation Coal Company (the Company) and members of Local 9690, United Mine Workers of America (the Union) brought this action in the United States District Court for the Southern District of West Virginia. Plaintiffs seek to recover damages for their alleged wrongful discharge by the Company in violation of the latter's collective bargaining agreement with the Union, and for the Union's alleged conspiracy with the Company in procuring by fraud a decision of the umpire under the grievance procedures of the union contract sustaining discharges of plaintiffs. The jurisdiction of the District Court was asserted under section 301(a) of the Taft-Hartley Act, 29 U.S.C.A. 185(a).[1] Each of the defendants filed motions to dismiss.[2] The District Court in a Memorandum Opinion dismissed the action as against all defendants on the ground that where a collective bargaining contract provides that a decision of the umpire in the arbitration of grievances shall be final, such a decision will be reviewed by the courts only where there is an allegation that the decision was procured by fraud and that plaintiffs' complaint did not state the circumstances constituting fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.[3]
 
 
 6
 Subsequent to the filing by the District trict Court of its Memorandum Opinion on April 4, 1966, plaintiffs filed a motion requesting leave to file an amended complaint. In their proposed amended complaint plaintiffs included certain amplifications with regard to the allegations of fraud. All defendants opposed plaintiffs' motion. The District Court found the factual allegations of the amended complaint were not materially different from those in the original complaint, denied plaintiffs' motion to amend, and ordered plaintiffs' original complaint dismissed with prejudice in accordance with its previously filed Memorandum Opinion.
 
 
 7
 Plaintiffs' suit is one for wrongful discharge and is grounded upon an alleged breach by the Company and the Union of the collective bargaining agreement. That agreement includes detailed grievance provisions for the handling of disputes relating to discharges and provides that a decision rendered by an umpire in the course of arbitration proceedings 'shall be final.' Plaintiffs allege that they submitted their claims pursuant to the grievance procedure, and that those claims were considered at the appropriate stage in this procedure by an umpire mutually agreed upon by the Company and the Union. Plaintiffs further aver that the Company and the Union conspired fraudulently to obtain and induce a decision of the umpire affirming their discharges. Plaintiffs allege that the Company threatened Union representatives with reprisals against the Local and that because of such threats the Union withheld information from the umpire pertinent to the disposition of plaintiffs' grievances.
 
 
 8
 The District Court dismissed solely on the ground that plaintiffs failed to allege fraud with sufficient particularity. That Court did not consider any of the other grounds advanced by defendants in support of their motions to dismiss. The questions arise as to whether plaintiffs were entitled to file their proposed amended complaint as a matter of right and also whether the original or amended complaint failed sufficiently to particularize fraud. The view which we take of this case does not require us to reach either of those issues. Suffice it to say that the amended complaint alleges basically the same facts and raises essentially the same issues as the original complaint. Both defendants raised the defense of res judicata in their motions to dismiss, alleging that plaintiffs had previously instituted this same action in the Circuit Court of Wyoming County, West Virginia, and that that Court had dismissed the action. Plaintiffs contend that res judicata cannot properly be raised in the context of a motion to dismiss, an argument which we reject as against the weight of authority. Jenson v. Olson, 353 F.2d 825 (8th Cir. 1965); Scholla v. Scholla, 201 F.2d 211, 213 (D.C.Cir. 1953); Larter & Sons, Inc. v. Dinkler Hotels Co., 199 F.2d 854, 855 (5th Cir. 1952); W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, Inc., 186 F.2d 236, 237 (2d Cir. 1951); Hartmann v. Time, Inc., 166 F.2d 127, 131, 137-138 (3d Cir. 1947).
 
 
 9
 There is no dispute concerning the facts in this case which are relevant to the claim of res judicata. For the reasons stated herein we affirm the dismissal of plaintiffs' complaint and apply the doctrine of res judicata.
 
 
 10
 On February 21, 1964, the same nine plaintiffs herein instituted an action in the Circuit Court of Wyoming County, West Virginia,[4] against the same defendants herein. As in this case, both the complaint and the amended complaint later filed in the State Court allege that plaintiffs were wrongfully discharged from their jobs by the Company and that the decision of the umpire in arbitrating the dispute in connection with their discharges was fraudulently obtained by a conspiracy of the Company and the Union. Both complaints filed in the State Court, as well as the complaint filed by the plaintiffs in the District Court below and the proposed amended complaint in that Court, contain substantially the same factual allegations. And in the State Court, as here, plaintiffs sought to set aside and vacate the decision of the umpire and sought judgment for compensatory and punitive damages against defendants.
 
 
 11
 In the State Court the Company filed an answer to the complaint and a motion to dismiss and motion for summary judgment. The Union moved to dismiss the original complaint on the ground that as unincorporated associations neither the Local nor the International could be sued by name under West Virginia law. Plaintiffs voluntarily entered an order dismissing the unincorporated associations as such and, with leave of court, filed an amended complaint substituting as defendants named individual district and local officers and committeemen.[5]
 
 
 12
 To the amended complaint the Company filed an amended answer and also a motion to dismiss. The record before us does not reveal whether the Company filed any supporting legal memorandum. Two of the individually named union official defendants, Titler and Gibson, appeared specially and filed a motion to dismiss. Two other individually named union representative defendants, Lambert and Cordell, also appeared specially filing a joint and several motion to dismiss. The fifth individual defendant, Smith, made no appearance or motion in the State Court. Lambert and Cordell filed a legal memorandum in the State Court in support of their motion to dismiss. In addition to that memorandum, at least two legal memoranda were filed by plaintiffs in the State Court in opposition to the motions to dismiss.
 
 
 13
 On March 8, 1965, the State Court entered an order sustaining the motions to dismiss filed on behalf of the Company and the individual defendants and dismissing plaintiffs' action 'as to all defendants. * * *' In its order the State Court assigned no reasons for the action it took, made no findings or conclusions, and filed no opinion.
 
 
 14
 On May 11, 1965, the nine plaintiffs petitioned to appeal to the Supreme Court of Appeals of West Virginia[6] and filed a lengthy supporting brief. On May 24, 1965, the State Supreme Court refused plaintiffs' petition for appeal without assignment of any reason. No review was sought by plaintiffs in the Supreme Court of the United States, although plaintiffs had urged throughout the State Court proceedings that their cause of action was grounded upon a federal statute-- section 301(a) of the Labor Management Relations Act of 1947-- and that state and federal courts had concurrent jurisdiction under that Act.[7] Plaintiffs instead instituted the instant action in the District Court on July 14, 1965.
 
 
 15
 Res judicata is a broad, judicially-developed doctrine under which the courts have sought to deal with the problems posed by the effects, if any, of a prior judgment on subsequent litigation. 'The principle of res judicata fosters reliance on judicial action, and tends to eliminate vexation and expense to the parties, wasted use of judicial machinery and the possibility of inconsistent results.'[8] The general rule in regard to cases where, as here, a defendant has prevailed in a former action is stated in the Restatement of Judgments[9] as follows:
 
 
 16
 Where a valid and final personal judgment is rendered on the merits in favor of the defendant, the plaintiff cannot thereafter maintain an action on the original cause of action. (Restatement 48.)
 
 
 17
 The rationale behind this rule is embodied in the determination and desire to put an end to litigation once it has reached a terminal point. As expressed in the Restatement (1 Comment a):
 
 
 18
 If a party has been successful in obtaining a judgment in his favor, he should not ordinarily be subjected to further litigation with respect to matters determined by the judgment; if a party after a full opportunity to be heard has been unsuccessful in obtaining a judgment upon a claim or in defending fending a claim against him, it is not unfair that he should be deprived of the privilege of further litigation with respect to matters determined by the judgment. If the State has afforded an apportunity to the parties to litigate their claims and a final judgment has been rendered, it is to the public interest that they should not be permitted to relitigate the same matters.
 
 
 19
 Of particular pertinence to the present action is the principle that a former judgment will be binding even though it may have been erroneous.[10] A litigant who has not fully exhausted his rights in a former action or who having exhausted them, seeks to bring that action anew and be heard again from the beginning, has already once 'had his day in court and he is not entitled to another opportunity to present his claim or defense.' Restatement 1 Comment b.
 
 
 20
 When viewed against the background of these principles, the cause of action which plaintiffs are seeking to maintain in the federal courts on this appeal has all of the hallmarks of a cause of action long since expired. Plaintiffs' initial grievances, their allegedly wrongful discharges, were first aired before the umpire pursuant to the collective bargaining agreement. When the umpire rendered an unfavorable decision, plaintiffs filed charges with the National Labor Relations Board in a series of cases. The Board in each instance refused to issue a complaint.[11] Though a refusal of the National Labor Relations Board to issue a complaint does not constitute an adjudication for purposes of applying the doctrine of res judicata in a subsequent court action under section 301,[12] the series of charges filed by plaintiffs with the Board and the failure of the Board to issue any complaint in connection with those charges in this instance serve to highlight the opportunities which have been available to plaintiffs to have their grievances authoritatively adjudicated. Failing in their attempts to cause the Board to issue a complaint, plaintiffs next instituted suit in the State Court. The detailed and lengthy memoranda filed by plaintiffs in that action show that plaintiffs not only were afforded, but indeed took advantage of, every 'fair opportunity to litigate a claim before a court which (had) jurisdiction over the parties and the cause of action.'[13] Having failed in their efforts in the trial and highest courts of the State of West Virginia, plaintiffs elected not to seek review in the United States Supreme Court and opted instead to reinstitute their action in the District Court, a tribunal whose jurisdiction over the action involved was concurrent with that of the State Court. It seems to us rather fundamental that this last in the series of actions taken by plaintiffs requires application of the doctrine of res judicata. However, no matter how closely any given case may seem to conform to the necessities out of which the doctrine of res judicata has grown, that doctrine is a technical instrument of the judicial craft and certain rules must be carefully followed in the application of the instrument. The rule which is relevant to the instant case has been stated above in the quotation from the Restatement dealing with the effect of a former judgment in favor of the defendant upon a subsequent attemp by the plaintiff to reinstitute the same cause of action.[14] Embraced within that rule are certain definite requirements which must be met before the rule will bar the subsequent suit. Briefly stated, these are: (1) The former judgment must have been both valid and final; (2) The cause of action asserted in the subsequent litigation must be the same cause of action as was asserted in the former litigation; (3) The former judgment must have been rendered on the merits; and (4) The parties to the former judgment must stand in such relationship to the parties to the subsequent action as to entitle the latter to the benefits and subject them to the burdens of the prior litigation.[15] Plaintiffs in this case have argued that only one of those requirements is not met, namely that the State Court judgment was not rendered on the merits, and that for that reason the doctrine of res judicata does not bar their suit herein. We find that both the first (i.e., validity and finality) and the second (i.e., the same cause of action) of the above requirements are clearly met in this case. We also find that the third and fourth of those requirements-- dealing respectively with whether or not the judgment of the State Court was on the merits and with the relationship of the parties in the State Court and District Court actions-- have been met. However, we consider it advisable to set forth ourreasons with regard to the third and fourth requirements in some detail.
 
 
 21
 The Dismissed in the State Court as a Judgment on the Merits
 
 
 22
 A dismissal of a cause of action may constitute a judgment on the merits depending upon the grounds upon which such dismissal is based. The West Virginia trial and highest courts assigned no specific reason for the actions they took. The absence of a written opinion does not, however, prevent application of the doctrine of res judicata. Napa Valley Elec. Co. v. Railroad Comm., of California, 251 U.S. 366, 373, 40 S.Ct. 174, 64 L.Ed. 310 (1920); Saint Lo Construction Co. v. Koenigsberger, 84 U.S.App.D.C. 319, 174 F.2d 25, 27, 10 A.L.R.2d 349 (1949). The pleadings in the prior action are availaboe to show what matters were in fact litigated and determined in the prior litigation. See Restatement 68 Comment k.
 
 
 23
 The motions to dismiss the amended complaint in the State Court action reveal that the defendants therein set forth a total of fifteen grounds. We deem it advisable to consider each of those fifteen proposed grounds for dismissal.
 
 
 24
 ( 1) The Company urged that the State Court suit was not a proper appeal from the arbitration award and that plaintiffs had no right to move to set aside the arbitration award. A dismissal on either of these grounds would clearly be on the merits.
 
 
 25
 ( 2) All of the individual defendants filing motions to dismiss contended that the State Court suit was barred under the doctrine of res judicata.
 
 
 26
 Again, a dismissal on this issue would be on the merits, even though it would have been erroneous.[16]
 
 
 27
 ( 3) The individual defendants also pleaded that plaintiffs' suit in the State Court was barred by limitations. Again, an affirmative holding dismissing on the basis of this defense would be on the merits.
 
 
 28
 ( 4) Two of the individual defendants argued that plaintiffs were estopped from bringing suit on the ground that one of the plaintiffs had appeared and participated in the arbitration procedure in his own behalf and on behalf of the other plaintiffs. This ground, if adopted by the State Court, would go to the merits.
 
 
 29
 ( 5) Two of the individual defendants urged that the umpire was an indispensable party, the lack of whose presence prevented the State Court from rendering a final judgment. The possibility that this defense was accepted by the West Virginia trial or appellate courts is so unlikely that we can ignore it.[17]
 
 
 30
 ( 6) The Company contended section 301 of the NLRA is limited to disputes between employers and unions and consequently individual employees cannot maintain suit thereunder in their own names. If such a position had been accepted by the State Court as a ground for dismissal, the determination would be on the merits, even though erroneous.[18]
 
 
 31
 (7) The Company urged the plaintiffs' sole cause of action, if any, was against the Union for breach of its fiduciary duty. A dismissal by the State Court on this ground would bar institution of this suit as against the Company but would not operate as a bar against the Union. See Restatement 49 Comment a, 50 Comments b and d. The Supreme Court of Appeals of West Virginia had, however, prior to the State Court action, held that individual employees may maintain suit against their employer for a violation by the employer of a collective bargaining agreement. Pettus v. Olga Coal Co., 137 W.Va. 492, 72 S.E.2d 881 (1952). Moreover, that same court had also held prior to institution of the State Court suit that an arbitrator's award which is fraudulent or induced by fraud may be reviewed and set aside by the courts. Dickinson v. C. & O. R.R. Co., 7 W.Va. 390, 429-430 (1874). Thus it appears highly unlikely that the State Court would have dismissed the action as to both the Company and the individual defendants on the ground that plaintiffs' sole cause of action was against the Union.
 
 
 32
 (8) Two of the individual defendants in the State Court proceeding, Lambert and Cordell, moved to dismiss on the ground that they were not necessary, proper or indispensable parties to that action. A dismissal on that ground as to those individual defendants would constitute a judgment on the merits as to those incividuals, but plaintiffs would not thereby be deprived of their right to maintain suit against all parties who were necessary, proper or indispensable. Plaintiffs connot, however, rely herein on the possibility that the State Court's dismissal as to those two defendants was on that basis in order to escape the effect of res judicata in a suit against the Union (standing in the shoes of the remaining three individual defendants) and the Company. The ground of such dismissal as to the two individual defendants could not be applicable to or explain the dismissal as to the Company or as to the remaining individual defendants and therefore does not eliminate the possibility that the dismissal as to the Company and the remaining three individual defendants was on the merits.
 
 
 33
 (9) The same two individual defendants referred to above under (8) moved to dismiss on the ground that they were not parties to the fraud alleged in plaintiffs' amended complaint in the State Court. Again, however, while a dismissal on that ground would constitute a judgment on the merits as to them, such a ground could not have been the basis for the dismissal as to the Company and the remaining three individual defendants, two of whom, Titler and Gibson, were more specifically alleged in plaintiffs' amended complaint in the State Court to be directly involved in the alleged fraudulent conspiracy.
 
 
 34
 (10) The defendants Titler and Gibson moved to dismiss because of alleged misjoinder of parties. A dismissal for that reason would be a dismissal on the merits as against those two defendants if they were the misjoined parties.[19] However, since the fraud allegations against them were clearly alleged in the State proceedings, Titler and Gibson certainly were not misjoined parties. A dismissal of other misjoined individual defendants would still leave the dismissal of Titler and Gibson to be explained on additional grounds and would thus result in the res judicata status insofar as the Union (standing in the shoes of Titler and Gibson) is concerned.[20] The possibility of a dismissal for misjoinder of the Company is one we discard completely.[24]
 
 
 35
 (11) Two of the individual defendants, Titler and Gibson, moved to dismiss on the ground that plaintiffs' complaint did not state a cause of action against them. If the State Court's dismissal was a holding by that Court that plaintiffs could in no case state in their complaint facts sufficient to constitute a cause of action, such dismissal would be a judgment on the merits and res judicata herein. Restatement 50 Comment c. In any event, we find it extremely unlikely that the State Court found the amended complaint before it demurrable in any respect. In comparing plaintiffs' amended complaint in the State Court with the complaint filed in the District Court, we find no allegations, which might conceivably be regarded as essential, which exist in the latter and are missing or lacking from the former.
 
 
 36
 ( 12) The Company asserted that plaintiffs were not entitled to sue as beneficiaries of the contract between it and the Union unless both parties to the contract, i.e., both the Company and the Union, were before the Court. If the State Court had based its dismissal on the ground that both the Company and the Union were necessary parties to the action, that decision would be res judicata in a subsequent action to the extent that plaintiffs could not relitigate without joining both the Union and the Company. Restatement 49 Comment b, 50 Comment d. But plaintiffs would not be barred by such a decision in the State Court from bringing an action against all of the parties determined in the State Court to be necessary to the action. A cause of action is not extinguished where a dismissal is based on misjoinder or non-joinder of parties. Restatement 49 Comment a. Thus, if the dismissal by the State Court was on the ground that the Union was a necessary party to any suit on the collective bargaining contract, such a defect in the plaintiffs' action in the State Court is cured herein by the joinder of the Union and the Company as parties defendant and would not operate to bar the present action.
 
 
 37
 We do not believe, however, that the State Court dismissed the State-Court complaint on the ground that the Union was a necessary party to the action. In Pettus v. Olga Coal Co., supra, twenty-four employees of a coal company brought suit against the company, in equity, for recovery of a sum alleged to be due them because of a breach by the company of a provision relating to a thirty-minute lunch period in the collective bargaining contract. The union was not joined as a defendant. The West Virginia trial court dismissed the case. The Supreme Court of Appeals of West Virginia affirmed the dismissal on the ground that the provisions of the contract relating to arbitration had not fully been complied with. That court, however, reached the question of whether or not the employees had a right to maintain a suit of that nature against their employer. The right of the employees to maintain the action, said the court, depended 'upon what position they occupy with reference to the contract.' 137 W.Va. at 496, 72 S.E.2d at 883-884. The court framed its answer to this matter in terms of a third-party beneficiary approach. In the first place it held that the employees could not avail themselves of a West Virginia statutory provision[22] relating to third-party beneficiaries. On this point the court held that the statute applied only to persons who were 'sole beneficiaries' of a promise or covenant, and that since the collective bargaining contract was for the benefit of both the employees and the union itself, the employees alone could not maintain suit as third-party beneficiaries under the statute. Secondly, the court held that the statute applied only to legal 'actions' and could not be relied upon by the employees to support their suit in equity. The court then went on to hold that the employees were third-party 'creditor' beneficiaries at common law and were entitled to maintain the suit under a state common-law doctrine that third-party creditor beneficiaries have a substantive right to recover against a contractual promisor by a suit in equity.
 
 
 38
 Implicit in the court's holding in Pettus is the proposition that individual employees may bring suit upon a collective bargaining agreement in their own names as third-party beneficiaries against one party to that contract without joining the other party to the contract as a defendant. The court in Pettus did not directly refer to the question of the absence of the union as a party to that suit, but the clear effect of its holding is to allow individual employees to maintain a suit in their own right against the company which employs them, and to do so in the absence of the union as a party to the proceedings, under the theory that such employees are suing as third-party beneficiaries. The plaintiffs in this case clearly were suing the Company as third-party beneficiaries of the collective bargaining contract. Thus, under the Pettus holding the Union was not an indispensable party defendant to that suit.
 
 
 39
 The West Virginia Supreme Court stated in Pettus that the employee plaintiffs as creditor beneficiaries of the union contract could maintain their suit in equity for damages, citing Aetna Life Ins. Co. v. Maxwell, 89 F.2d 988, 994 (4th Cir. 1937). In the Maxwell case this Court construed West Virginia law to permit suits in equity, but not in law, by creditor beneficiaries. After the Pettus and Maxwell decisions and before the commencement of the State Court action herein, West Virginia abolished all procedural distinctions between law and equity.[23] The Pettus ruls would therefore seem applicable to the State Court proceeding herein in which plaintiffs, without any indication of whether they were seeking legal or equitable relief, sought damages as did the plaintiffs in Pettus.
 
 
 40
 ( 13) The individual defendants urged in the State Court that the complaint failed to allege the circumstances constituting the alleged fraud with particularity as required under the West Virginia Rules of Civil Procedure.[24] If the State Court's dismissal had been based on the ground that plaintiffs' complaint in that proceeding did not allege fraud with sufficient particularity that dismissal would be considered as a judgment for the defendants therein which was not on the merits. Plaintiffs' cause of action would not be extinguished by such a dismissal since it would not be based on a ground 'involving the substance of the plaintiff's cause of action. * * *' Restatement 49 Comment a. Plaintiffs would be entitled to cure the defect in the pleading by alleging fraud with the requisite specificity and proceed to reinstitute the action. As it stated in the Restatement:
 
 
 41
 Even though the judgment for the defendant is based upon the failure of the plaintiff to state in his complaint facts sufficient to constitute a cause of action, the plaintiff is not necessarily precluded thereby from maintaining an action on his original cause of action. If his complaint in the later action contains further allegations, the omission of which made the complaint in the first action demurrable, the judgment in the first action is not a bar to the second action, although (see Comment e) he has failed to avail himself of permission to amend. Thus, if in an action for breach of contract a demurrer to the complaint is sustained on the ground that the plaintiff failed to allege consideration, he is not precluded from bringing a new action in which the complaint contains an allegation of consideration. Similarly, if in an action for slander a demurrer to the complaint is sustained because of the failure of the plaintiff to allege special damages, he is not precluded from maintaining a new action upon a complaint in which special damages are alleged. (Restatement 50 Comment c).
 
 
 42
 If the State Court dismissed the complaint in the State Court proceedings on the ground that fraud was not alleged with sufficient specificity, plaintiffs nevertheless would not be entitled to bring the within subsequent complaint if the latter again failed to set forth the circumstances constituting fraud with sufficient specificity. 'If judgment for the defendant was rendered on a demurrer to the complaint in which a necessary allegation was omitted, and the plaintiff brings a new action in which the complaint is substantially the same as in the prior action, the plaintiff is not entitled again to litigate the question whether the complaint is sufficient.' Restatement 50 Comment d. A dismissal on the ground that fraud was not alleged with sufficient specificity would be res judicata as to that matter and a complaint filed in a subsequent suit which alleged fraud with only the same degree of specificity would be barred. See Restatement 50 Comment d.
 
 
 43
 The question thus arises as to the degree of specificity with which fraud was alleged in the amended complaint filed by plaintiffs in the State Court as compared with the complaint filed in the District Court. In comparing the two complaints it is apparent that the allegations of fraud are practically the same in each. Both charge the substance of the alleged fraud-- an alleged conspiracy between the Union and the Company to procure an arbitration decision unfavorable to the plaintiffs-- and the facts alleged in both complaints to support the fraud charge are almost the same. We thus find that plaintiffs' complaint in the District Court is, in the words of the Restatement, 'substantially the same as (the complaint) in the prior action' insofar as the allegations of fraud contained therein are concerned. We reach the same conclusions in comparing plaintiffs' amended complaint in the State Court with plaintiffs' proposed amended complaint in the District Court below (which, as we have noted above, does not materially differ from the original complaint filed by plaintiffs in the District Court). Therefore, assuming that the dismissal by the State Court was based on the ground that plaintiffs had not in their complaint alleged the circumstances constituting fraud with sufficient particularity, plaintiffs have failed to cure that drfect in the complaint filed herein and, upon that assumption, would be barred from bringing this action under the principles of res judicata.
 
 
 44
 ( 14) The Company set forth as a ground in support of its motion to dismiss in the State Court the proposition that the exclusive jurisdiction over plaintiffs' cause of action lay in the federal courts. Similarly, two of the individual defendants, Lambert and Cordell, pleaded that plaintiffs' action therein was not cognizable in the courts of West Virginia. A dismissal by the State Court, if based on these grounds, would constitute a dismissal for lack of subject-matter jurisdiction and would not foreclose plaintiffs from reinstituting the action in a court which had jurisdiction over the subjectmatter, in this case the District Court. Restatement 49 Comment a.
 
 
 45
 We do not believe that the State Court dismissed plaintiffs' complaint on the ground that exclusive jurisdiction over such actions lay in the federal courts. At the time of the entry of the order dismissing that complaint, on March 8, 1965, the law was well settled that the jurisdiction of state and federal courts over causes of action cognizable under section 301(a) was concurrent. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Local 174 etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).[25]
 
 
 46
 ( 15) Two of the individual defendants, Titler and Gibson, argued in support of their motion to dismiss that exclusive jurisdiction of the subject matter of plaintiffs' complaint lay in the National Labor Relations Board. Ordinarily a decision on such ground, even if erroneous, would constitute a binding adjudication as to a point of law and would subsequent reinstitution of the action. But such a decision would preempt not only the jurisdiction of the state court but jurisdiction of the federal court as well. In a case directly in point, it was held that a federal court would not recognize as binding upon it a prior decision by a state court that the National Labor Relations Board possessed exclusive jurisdiction over the subject matter of a plaintiff's action. Kipbea Baking Co. v. Strauss, 218 F.Supp. 696 (E.D.N.Y.1963).
 
 
 47
 We do not, however, believe that the State Court in this case dismissed plaintiffs' action on the ground that exclusive jurisdiction over that action lay with the Board. Prior to the State Court action, the United States Supreme Court had clearly held that suits may be maintained in either the state or federal courts under section 301(a) even though the subject matter of such suits might constitute an 'unfair labor practice' over which the Board might have jurisdiction. Cary v. Westinghouse Elec. Corp., 375 U.S. 261, 268, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); Humphrey v. Moore, supra, 375 U.S. at 344, 84 S.Ct. 363; Smith v. Evening News Ass'n, 371 U.S. 195, 197-198, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Plaintiffs' complaint does not present a situation in which any serious problem would arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, a problem alluded to by Mr. Justice White in the Smith case. 371 U.S. at 197-198, 83 S.Ct. 267. In view of the state of the law on the subject at the time the State Court dismissed plaintiffs' action, we do not consider that its dismissal was based on this ground.
 
 
 48
 Having reviewed all of the fifteen grounds of dismissal raised by the defendants in the State Court action and having not discovered or been referred to any other additional explanation for such dismissal, we conclude that the State Court's dismissal constitutes a judgment on the merits.
 
 The Relationship of the Parties
 
 49
 Ordinarily the only persons who will be bound or will benefit by a final personal judgment rendered on the merits will be those persons who were parties to that action. Having determined that the State Court's dismissal was a judgment on the merits and that all of the other requirements of the doctrine of res judicata exist in regard to the instant action, it is necessary to consider whether the parties now before the Court are persons affected by the State Court's dismissal. With regard to the Company, there is no difficulty. Both it and the present plaintiffs were parties of record to the State Court action. Plaintiffs are thus barred by the dismissal therein from reinstituting this action against the Company.
 
 
 50
 The question arises, however, as to whether or not the Union is entitled to the benefit of the State Court dismissal of the individual difendants. We determine that it is.
 
 
 51
 The Restatement sets forth the following rule:
 
 
 52
 A valid judgment on the merits and not based on a personal defense, in favor of a person charged with the commission of a tort or a breach of contract, bars a subsequent action by the plaintiff against another responsible for the conduct of such person if the action is based solely upon the existence of a tort or breach of contract by such person, whether or not the other person has a right of indemnity. (Restatement 99).[26]
 
 
 53
 We find that rule to be controlling here. Plaintiffs can prevail in the instant suit against the Union only if they prove that the officials and representatives of the Union who represented them in the grievance procedure subsequent to their discharge acted fraudulently. In their suit against those officials and representatives in the State Court, plaintiffs have had their day in court and being unsucessful therein it is not unfair that they should be denied in the District Court an action against the Union.
 
 
 54
 In conclusion, we hold that the dismissal by the State Court of plaintiffs' complaint was a judgment on the merits which bars this action against the defendants herein, under the doctrine of res judicata.
 
 
 55
 Affirmed.
 
 
 
 [1]
 'Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.'
 
 
 [2]
 The Company contended that the complaint failed to state a cause of action and was barred both by limitations and the doctrine of res judicata. The Union argued that the complaint failed to state a cause of action and was barred by res judicata, that the complaint was barred by limitations, that the District Court was without jurisdiction since the matters set forth in the complaint are within the exclusive jurisdiction of the National Labor Relations Board and also not within the subject matter under section 301(a), that the Union is an unincorporated association under West Virginia law and could not be sued in West Virginia since it is not a 'jural entity,' that the District Court had no jurisdiction over the Union or the subject matter of the action because the action could not be maintained against it under Rule 17(b) of the Federal Rules of Civil Procedure, that diversity of citizenship was lacking between plaintiffs and defendants, that the complaint failed to allege the circumstances constituting fraud with the particularity required by Rule 9(b) of the Federal Rules, and that the complaint failed to state and contain a short and plain statement of the claim as required by Federal Rule 8(a)(2) showing that plaintiffs are entitled to the relief sought
 
 
 [3]
 Federal Rule 9(b) provides that 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. * * *'
 
 
 [4]
 Hereinafter referred to as the 'State Court.'
 
 
 [5]
 The individual substituted defendants were George J. Titler, Harry T. Gibson, Douglas Lambert, Curtis Cordell (incorrectly named in the amended complaint as 'Curtis Caudill') and Clarence Smith. It appears from the amended complaint in the State Court and from a supporting memorandum filed therein by plaintiffs that Lambert, Cordell and Smith were individual members of the Mine Committee of the Local Union who were charged with the responsibility of representing plaintiffs at two stages of the grievance procedure and who actively participated in that procedure. Titler and Gibson were District representatives of the Union who are alleged by plaintiffs in their amended complaint in the State Court to have represented plaintiffs in the grievance process at each stage
 
 
 [6]
 Hereinafter referred to as the 'State Supreme Court.'
 
 
 [7]
 It is completely clear that section 301(a) is both jurisdictional and substantive-- that it gives federal courts jurisdiction while at the same time authorizing them 'to fashion a body of federal law for the enforcement of * * * collective bargaining agreements * * *.' Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). The substantive law to be applied in suits under section 301(a) 'is federal law, which the courts must fashion from the policy of our national labor laws.' Id. at 456, 77 S.Ct. at 918, accord, Vaca v. Sipes, 386 U.S. 171, 174, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Jurisdiction of state courts over suits for violation of collective bargaining agreements is not, however, divested by section 301(a). Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). The jurisdiction of state and federal courts over suits for violation of collective bargaining contracts is concurrent. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Local 174 etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Where, however, litigation brought in a state court is 'within the purview of 301(a),' the substantive law which the state court must apply is federal. Local 174 etc. v. Lucas Flour Co., supra, 369 U.S. at 102-04, 82 S.Ct. 571. 'The dimensions of 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute.' Id. at 103, 82 S.Ct. at 576. There is no doubt that a suit, such as the instant one, which charges the employer with a breach of the collective bargaining contract in wrongfully discharging employees and which charges the union with a violation of the duty of fair representation is a suit within the purview of section 301(a) and which is thus governed by substantive federal law. Vaca v. Sipes, supra; Humphrey v. Moore, supra; Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Since any suit within the purview of section 301(a) will involve questions of federal labor law, a party to such a suit may petition for certiorari to the United States Supreme Court. See, e.g., Local 174 etc. v. Lucas Flour Co., supra, 369 U.S. at 98, 82 S.Ct. 571
 
 
 [8]
 Developments in the Law-- Res Judicata, 65 Harv.L.Rev. 818, 820 (1952)
 
 
 [9]
 Restatement of Judgments (1942). Hereinafter referred to as 'Restatement.'
 
 
 [10]
 'The fact that the judgment was erroneous does not preclude the defendant from relying upon it as a bar in a subsequent action brought by the plaintiff on the original cause of action. If it was erroneous, the plaintiff might have taken steps to have it set aside or reversed in the original proceeding. If he has not done so, or if his attempt to do so was unsuccessful, he cannot thereafter collaterally attack it.' Restatement 48 Comment a
 
 
 [11]
 The following account of the disposition of the charges filed with the NLRB is set forth in the Company's answer to plaintiffs' original complaint in the State Court:
 Plaintiffs, through their attorney, D. Grove Moler, on February 15, 1963, filed with the National Labor Relations Board of the United States of America, in Case No. 9-CA-2795, 'Charge Against Employer', charging Consolidation Coal Company with unfair labor practices in that the company discharged the plaintiffs named in this complaint in order to discourage their membership in, and activities on behalf of, the United Mine Workers of America, and that the employer had also interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed them under the National Labor Relations Act. On June 26, 1963, the Regional Director, John S. Getreu, refused to issue a complaint as there was insufficient evidence of violation of the act, which decision was not appealed. * * *
 Also, on the 13th day of March, 1963, D. Grove Moler, attorney, on behalf of the plaintiffs named in this complaint, filed with the National Labor Relations Board of the United States of America, in Case No. 9-CB-1098-1, against Local Union 9690, United Mine Workers of America, and Case No. 9-CB-1098-2, against District 29, United Mine Workers of America, charges stating that Local Union 9690, by its Grievance Committee, caused and attempted to cause Consolidation Coal Company to discriminate against the plaintiffs in this complaint and aided and abetted in the discharge of the plaintiffs in this complaint by omitting to provide adequate and proper representation in the processing of contractual grievance procedure and counseling and permitting said plaintiffs in this complaint to omit valid and substantial defenses and permitting the employer to make up an improper 'loaded' record against the plaintiffs named in this complaint. The charge against District 29, United Mine Workers of America, was substantially the same as that against Local Union 9690, United Mine Workers of America. On April 3, 1963, the Regional Director, John C. Getreu, found insufficient evidence of violation, and upon review it was found that further proceedings were deemed unwarranted, which decision was not appealed. * * *
 On April 19, 1963, Ted Q. Wilson, attorney, on behalf of Charles Taylor and the other eight plaintiffs named in this complaint, filed with the National Labor Relations Board of the United States of America charges in Case No. 9-CA-2839, Consolidation Coal Company, Case No. 9-CB-1116-1, Local 9690, United Mine Workers of America, and Case No. 9-CB-1116-2, District 29, United Mine Workers of America, charging Consolidation Coal Company with discharging Charles Taylor and the eight other plaintiffs named in this complaint for sympathies and activities on behalf of the Southern Labor Union and coercing its employees; charging Local 9690, United Mine Workers of America with causing Consolidation Coal Company to discriminate against Charles Taylor and the eight other named employees in this complaint by failing to represent the said nine plaintiffs named in this complaint when they were discharged; and charging District 29, United Mine Workers of America with assisting Consolidation Coal Company in discriminating against the nine plaintiffs named in this complaint and also failure to represent them. On April 30, 1963, these charges were all amended but made practically the same charges with reference to the period beginning January 2, 1963. On June 26, 1963, again the Regional Director, John C. Getreu found insufficient evidence of violation. On review on October 2, 1963, the Board found further proceedings were deemed unwarranted, which decision was not appealed. * * *
 
 
 [12]
 The fact that an unfair labor practice (in regard to which the NLRB might issue a complaint) does or does not exist is largely irrelevant to a party's right to maintain suit under section 301(a). See Vaca v. Sipes, supra, 386 U.S. at 176-188, 87 S.Ct. 903, 17 L.Ed.2d 842; Carey v. Westinghouse Electric Corp., 375 U.S. 261, 268, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); Humphrey v. Moore, supra, 375 U.S. at 344, 84 S.Ct. 363, 11 L.Ed.2d 370. In addition, Professor Davis has stated, citing N.L.R.B. v. Baltimore Transit Corp., 140 F.2d 51 (4th Cir.1944), that 'a refusal by the National Labor Relations Board to file a complaint is not a final decision on the merits and is not res judicata. * * *' 2 K. Davis, Administrative Law Treatise 18.06, at 584-85 (1958). See also id. 18.03, at 559
 
 
 [13]
 Restatement 1 Comment c
 
 
 [14]
 See Restatement 48, quoted above
 
 
 [15]
 We know of no federal law doctrine with regard to res judicata which differs from that stated by the Restatement. Further, West Virginia case law would seem clearly in accord with the Restatement's enunciation of the elements of res judicata. There is thus no question present in this case concerning whether federal or West Virginia principles of res judicata would apply if they were differing, though federal law has been held to govern generally where section 301 is concerned. Local 174 etc. v. Lucas Flour Co., supra, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593. The West Virginia Supreme Court of Appeals, citing Bouvier's Law Dictionary, has stated that 'to make a matter res adjudicata, there must be a concurrence of four conditions, namely: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons, and of parties to the action; (4) identity of the quality in the persons for and against whom the claim is made.' Marguerite Coal Co. v. Meadow River Lumber Co., 98 W.Va. 698, 702, 127 S.E. 644, 646 (1925). See also Barnett v. Wolfolk, 149 W.Va. 246, 140 S.E.2d 466 (1965), and cases cited therein. All of these factors are embraced within the four requirements as we have stated them in the body of this opinion
 
 
 [16]
 A judgment on the merits is res judicata even though erroneous. Restatement 48 Comment a, cited at note 10 supra. The plea of res judicata in the State Court was apparently in reference to the fact that the National Labor Relations Board had on several occasions refused to issue complaints in connection with charges filed by the nine plaintiffs. As stated above, a refusal of the Board to issue a complaint does not constitute an adjudication for purposes of applying the doctrine of res judicata in a subsequent court action. See note 12 supra
 
 
 [17]
 We have not been directed to nor have we found any case holding that an arbitrator is a necessary party to a suit in which the validity of the arbitration award is in question. Indeed, the law in West Virginia, as elsewhere, seems clear that the arbitrator is not a necessary party to such a suit. See Simmons v. Simmons, 85 W.Va. 25, 34-35, 100 S.E. 743, 748 (1919)
 
 
 [18]
 See notes 10 and 16 supra. A holding that individual employees cannot maintain suit in their own names under section 301 would clearly be erroneous. See Humphrey v. Moore, supra, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; Smith v. Evening News Ass'n, supra, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246
 
 
 [19]
 See the discussion under (12) infra
 
 
 [20]
 See the discussion under (8) supra
 
 
 [21]
 See the discussion under (7) supra
 
 
 [22]
 'if a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.' 15 W.Va. Code Ann. 55-8-12 (1966)
 
 
 [23]
 'There shall be one form of action to be known as 'civil action'; all procedural distinctions between actions, suits and other judicial proceedings at law or in equity and in the forms of actions are abolished.' W.Va.R.Civ.P. 2, 3 W.Va.Code Ann. (1961)
 
 
 [24]
 W.Va.R.Civ.P. 9(b), 3 W.Va.Code Ann. (1961)
 
 
 [25]
 In their briefs in this appeal counsel for all the parties have argued the applicability of Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), to the facts of the instant case. There Bullington, a Virginia citizen, instituted suit against Angel, a citizen of North Carolina, in a North Carolina state court to recover a deficiency judgment in a mortgage foreclosure procedure in connection with property sold in Virginia. A North Carolina statute declared that no such deficiency judgment could be obtained. Ullington argued on appeal in the Supreme Court of North Carolina that 'the United States Constitution precluded North Carolina from shutting the doors of its courts to him' (330 U.S. at 185, 67 S.Ct. at 659), but that court held that Bullington's suit was barred by the statute. Bullington did not seek review by appeal or certiorari to the United States Supreme Court but instead reinstituted the same cause of action in a federal District Court sitting in North Carolina. The District Court gave judgment for Bullington. The Supreme Court of the United States held in reviewing that judgment that Bullington's suit in the District Court was barred by res judicata. In our view the decision of the United States Supreme Court in Angel has no applicability to the facts of the instant case. See Kipbea Baking Co. v. Strauss, 218 F.Supp. 696, 698-699 (E.D.N.Y. 1963). In Angel, which was a diversity action, the North Carolina Supreme Court sustained the validity of a North Carolina statute which barred Bullington from maintaining his suit. In view of the cases cited above in the text which hold that the state and federal courts have concurrent jurisdiction over causes of action cognizable under section 301(a), we are convinced that the State Court in this case did not dismiss plaintiffs' complaint on the ground of lack of existence of such jurisdiction in the State Court
 
 
 [26]
 In the situations with which the Restatement rule is concerned 'the person against whom the rule works adversely had had his day in court and it is not unfair that if he is unsuccessful in his action against the alleged tort-feasor or contract breaker, he should be deprived of an action against another, even though the other would have no right of indemnity against the defendant in the first action were judgment rendered against him.' Restatement 99 Comment a. The principle which underlies the rule has also been stated as follows: 'An almost universal exception to the requirement of mutuality is found where the liability of the defendant in the later action is based solely upon a culpable act of another. Where the immediate actor has already been found not liable, it has seemed unfair to permit further litigation which might result in liability being imposed upon the defendant, despite the fact that the jury might have erred in the first suit.' Developments-- Res Judicata, supra, 65 Harv.L.Rev. at 862-63. The West Virginia cases which discuss res judicata have for the most part been cases involving assertions of res judicata in connection with prior adjudications between other plaintiffs and the same defendants. E.g., Barnett v. Wolfolk, supra, 149 W.Va. 246, 140 S.E.2d 466; Gentry v. Farruggia, 132 W.Va. 809, 53 S.E.2d 741 (1949); but see Collins v. Treat, 108 W.Va. 443, 152 S.E. 205 (1930). In this case the prior adjudication concerns the same plaintiffs and agents of the defendant Union. We have found no federal, West Virginia or other case law contrary to the position stated by the Restatement and by the Harvard Law Review Developments Note with regard to the factual situation which confronts us in this case